Chief Judge Fuld.
This is another of those rare cases (see, e.g., People v. Jones, 25 N Y 2d 637, affg. 31 A D 2d 780) in which the representation of a defendant by his assigned lawyer was so inadequate and ineffective as to deprive him of a fair trial.
The appellant, now 69 years old, was indicted, along with a codefendant (Henry Murray), for first degree robbery in September of 1951. In less than two months before the crime, he had tried to commit suicide by jumping off a roof and, while in the Tombs following his arrest, several times slashed his wrists. In February of 1952, he was found “incompetent” by psychiatrists at Bellevue Hospital to stand trial and was committed to Matteawan State Hospital, where he remained for about a year. A couple of months after being returned to the Tombs, he was transferred to Bellevue for further psychiatric observation.
An attorney, who had been practicing for some 11 years, was assigned to represent him in June, 1953 and he was brought to trial in January, 1954 in the Court of General Sessions. He was found guilty by a jury which recommended “ leniency.” The court thereafter, in February, 1954, sentenced him as a fourth felony offender to a term of from 30 years to life.
A notice of appeal had been timely filed on the appellant’s behalf but in November, 1954 the Appellate Division dismissed the appeal for failure to prosecute. However, it reinstated the appeal—initially in 1965 and again in 1969—when it appeared that the appellant had been confined to Dannemora State Hos *465 pital for virtually all of the intervening years. At any rate, a divided Appellate Division affirmed the judgment of conviction in December, 1970 (35 A D 2d 944). The majority rejected all the contentions urged upon it by the appellant, including, in particular, his claims (1) that the trial judge should have, on his own motion, ordered a hearing to determine his competency to stand trial and (2) that he was prejudiced by the statement, made by a Bellevue psychiatrist during cross-examination by the District Attorney, suggesting that he had a criminal record. We thoroughly agree with the Appellate Division’s treatment and rejection of those two claims — reasserted in our court — and turn to the appellant’s additional argument that, by reason of his lawyer’s manifest failure to prepare the defense that he was “ insane ” at the time the crime was committed, he was deprived of effective assistance of counsel and, by that token, denied a fair trial.
The appellant’s guilt was proved almost beyond all doubt. The evidence established that he was arrested, along with his accomplice, as he fled from the scene of the robbery. In addition, three eyewitnesses to the robbery identified him, and his codefendant Murray—who had pleaded guilty and been sentenced to 15 years to life — actually testified for the People, fully implicating the appellant. In the light of such evidence, the appellant’s only possible defense was that of “ insanity ” when the crime was committed, and there was ample basis for such a defense. The appellant had tried to kill himself a month and a half before the robbery; he had slashed his wrists while in jail; he had required psychiatric treatment two weeks after the robbery; and, found incompetent to stand trial, he was committed to Matteawan where he remained for almost a year.[1] Unquestionably, such a history justified full and careful preparation of the case for the defense. Yet, and despite all this, counsel was, as the record persuasively demonstrates, so completely unfamiliar with either the facts or the law bearing on his client’s case as to doom the defense to failure.
Thus, although he had been assigned to represent the appellant some seven months before, he told the judge on the first day *466 of the trial that he was “ not ready ”. In point of fact, (1) he had not read a single one of the numerous hospital records dealing with his client’s mental condition; (2) he had not, prior to the trial, spoken to any of the doctors at Bellevue or Matteawan; (3) he was so woefully unprepared on the law vis-a-vis the insanity defense that the court requested the prosecutor and the psychiatrist attached to the District Attorney’s staff to “assist” defense counsel so as to avoid “wast[ing] more time”; (4) he was unable, even after being given additional time by the judge, to phrase the essential hypothetical question for the psychiatrists he had called to the stand and, in fact, finally had to adopt the prosecutor’s own hypothetical question which, quite obviously, was designed to elicit the response that the appellant was sane; (5) both of the psychiatrists placed on the stand by counsel testified that the appellant was sane; (6) and, as the trial court observed, counsel’s “blanket offer” to put into evidence all of the hospital records would have called to the jurors’ attention inadmissible and highly prejudicial matter. Indeed, his lack of preparation was so patent as to move the court to remark, at various times during the trial, that (1) “ [y]ou can’t try an insanity defense like you try disorderly conduct”; (2) “ [a]n insanity defense * * * has got to be carefully prepared. You can’t go in cold”; and (3) “ [t]his case has been on trial for five days. It has been horribly prepared by counsel.”
It is impossible to define with any precision what constitutes “inadequate” or “ineffective” legal representation or to formulate standards which will apply to all cases. But, at the very least, the right of a defendant to be represented by an attorney means more than just having a person with a law degree nominally represent him upon a trial and ask questions. Moreover, and this is well settled, the defendant’s right to representation does entitle him to have counsel ‘ ‘ conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial.” (Coles v. Peyton, 389 F. 2d 224, 226; see, also, People v. Shells, 4 Cal. 3d 626, 630; People v. Ibarra, 60 Cal. 2d 460, 464; People v. Be Simone, 9 Ill. 2d 522, 526-527, 531; ABA Project on Standards for Criminal Justice, The Prosecution Function and the Defense Function, *467 § 4.1, pp. 22A-228 [Approved Draft, 1971].) Clearly, then, where, as in the present case, the record unequivocally demonstrates a complete lack of investigation or preparation whatever on the only possible defense available, the lawyer, far from providing the sort of assistance which the Constitution guarantees to the most lowly defendant, has, in truth, rendered ‘ ‘ the trial a farce and a mockery of justice ’ ’. (People v. Brown, 7 N Y 2d 359, 361; People v. Tomaselli, 7 N Y 2d 350, 354; see People v. Shells, 4 Cal. 3d 626, 630, supra; People v. Ibarra, 60 Cal. 2d 460, 464, supra; People v. De Simone, 9 111. 2d 522, 526-527, 531, supra.)[2]
This brings us to the District Attorney’s insistence that the court should not consider the point because it was not presented below. Although it has been said that we will not, as a general rule, “make an initial determination of incompetency” absent “ a motion or other application * * * by defendant to the trial court ” (People v. Brown, 28 N Y 2d 282, 286, 287), we will not invoke or apply the rule where the defendant’s deprivation of effective representation is as gross and as manifest as it was in the present case. The proper administration of justice demands that violation of a defendant’s constitutional right to counsel and a fair trial may he raised for the first time in our court. (See, e.g., People v. Arthur, 22 N Y 2d 325, 329; People v. McLucas, 15 N Y 2d 167, 172; Cohen and Karger, Powers of the New York Court of Appeals, § 199, pp. 750-751.)
The order appealed from should be reversed and a new trial ordered.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, etc.

. It should be noted, in passing, that, following his conviction, the appellant actually spent 15 years in Dannemora State Hospital.

. We recognize that, even if the lawyer had been prepared, the jury might have found his client sane and have adjudged him guilty. That is beside the point. What is crucial and operative is the unassailable fact that counsel’s failure to prepare the defense was so egregious as to render a verdict of guilt inevitable and thereby deny the appellant a fair trial.