*268 OPINION OF THE COURT
Jack Rosenberg, J.
Indictment number 1354/77 charged the defendant with the crimes of murder in the second degree in violation of section 125.25 of the Penal Law (three counts), robbery in the first degree in violation of section 160.15 of the Penal Law, burglary in the first degree in violation of section 140.30 of the Penal Law (two counts), and criminal possession of a weapon in the fourth degree in violation of section 265.05 of the Penal Law. All the counts in the indictment arose out of a robbery on July 1, 1977 in the course of which the defendant and two others not yet apprehended shot and killed Wilbur Barber and stole his money. Defendant was taken into custody on July 5, 1977. On January 19, 1978, he pleaded guilty to manslaughter in the first degree in satisfaction of the entire indictment. On March 2, 1978, the People filed a predicate felony information on the defendant and the defendant requested a hearing thereon. That hearing, pursuant to CPL 400.21 (subd 7, par [b]), was held before me on March 9, 1978. At that hearing the defendant acknowledged that on December 18, 1967 he had been convicted on his plea of guilty to manslaughter in the second degree, a felony, in satisfaction of an indictment for murder in the first degree and was sentenced on February 2, 1968 to a term of imprisonment of from four to five years. The defendant claimed, however, that since he was born on September 4, 1950 (the People conceded that date of birth at the predicate felony hearing), he was 16 years old when he made his plea and was, therefore, eligible for youthful offender treatment. His then attorney failed to apply for such treatment for him, nor did the sentencing court give any consideration to the fact that he was eligible for such treatment. This failure, defendant contended at the predicate felony hearing, was such inadequate representation by counsel, that it amounted to a denial to him of his constitutional right to counsel, thus rendering the prior felony conviction unconstitutional (People v Taylor, 86 Misc 2d 445).
To determine the validity of that claim the court must determine, first, whether defendant was eligible for youthful offender treatment at the time of his plea of guilty to manslaughter in the second degree in 1967. The statute then in effect defining eligibility for such treatment was section 913-e of the Code of Criminal Procedure, which granted eligibility for youthful offender treatment to "a youth who had commit *269 ted a crime not punishable by death or life imprisonment” (emphasis supplied). The defendant had been charged in the indictment which led to his plea of guilty to manslaughter in the second degree, with the commission of murder in the first degree. If he had been found to have committed that crime, which was punishable by death or life imprisonment, he would clearly not have been eligible for youthful offender treatment. But the crime of which he was convicted on his plea of guilty, i.e., found to have committed, was one which would have left him eligible for such treatment. Defendant contends that the attorney representing him in that prior conviction should have applied for youthful offender treatment for him after his conviction and that his failure to do so made his representation of his client so inadequate as to constitute a failure of counsel rendering the conviction unconstitutional.
Hence, the first question before this court is whether the term "committed” in section 913-e of the Code of Criminal Procedure means "convicted” or whether it means simply "charged” or "indicted”, the word used in CPL 720.10, which replaced section 913-e of the Code of Criminal Procedure. CPL 720.10 denied eligibility for youthful offender treatment to a youth "indicted for a Class A felony,” or previously convicted of a felony. But the ambiguity arising out of the use of the word "committed” in section 913-e as compared with the use of the word "indicted” in its successor provision in the CPL is, in my opinion, resolved by the fact that the procedure under the Code of Criminal Procedure for determining eligibility for youthful offender treatment, which was set forth in section 913-f permitted the commencement of such a determination at the time of indictment since either the Grand Jury or the District Attorney, or the court in which the indictment or information was pending, had to "recommend” that the defendant be "investigated” for the purpose of better enabling the court to make the ultimate determination (Code of Criminal Procedure, § 913-g, subds 1, 2). As Judge Denzer points out in his commentary on CPL article 720, which deals with the youthful offender procedure, the salient feature of the final version thereof, the 1971 version, was that it transferred "the determination to grant or refuse youthful offender treatment from a point near the commencement of the criminal action and before entry of a plea, to a point virtually at the end of the action, namely, after conviction for the crime and immediately before sentence (§ 720.20). No step in the youth *270 ful offender process is taken until conviction (either by verdict or plea).” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL art 720, p 316; see People v Johnson, 32 AD2d 968.) This not only negates any finding that "committed” in section 913-e can be read as intended by the Legislature to be equivalent to "convicted”, but it also makes clear that defendant’s counsel in the 1967 case was in no way chargeable with such neglect, in failing to apply for youthful offender treatment for his client as to constitute a denial of adequate representation to him, since the crime for which his client had been indicted rendered him ineligible for such treatment even if either the Grand Jury or the District Attorney had recommended it (People v Geeter, 6 Misc 2d 865, 866).
In addition, defense counsel may have been deterred from applying for youthful offender treatment for his client even after his plea to manslaughter was accepted because of an awareness on his part that there was a conflict of authority as to whether he had a right to make such an application. The statute clearly assigned the responsibility for recommending investigation to determine a defendant’s eligibility for such treatment on the Grand Jury, the District Attorney or the court. It had been read literally as providing no means for a defendant to stimulate the exercise of the court’s discretion as to whether to grant it (People v Hines, 24 Misc 2d 484, 485). But at least one court has ruled to the contrary (People v Judd, 61 Misc 2d 180), though after the plea of guilty by the instant defendant in December, 1967. (See, also, People v Roberts, 35 AD2d 760; People v Johnson, supra.) Hence, any assumption that the defendant’s counsel’s failure to seek youthful offender treatment for his client was a form of representation "so inadequate and ineffective as to deprive him of a fair trial” (People v Bennett, 29 NY2d 462, 464) is notably inaccurate, but it also reflects a form of hindsight which is equivalent to remaking the test of People v Tomaselli (7 NY2d 350, 356), which is that "there is denial of effective representation of counsel only when the representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of it and correct it”, into a test of errorless legal counseling. As the Appellate Division has said in People v Sims (55 AD2d 629, 630) "it is elementary that the right to effective representation includes the right to assistance by an attorney * * * who is familiar *271 with, and able to employ * * * basic principles of criminal law and procedure”. I also recognize that our Court of Appeals has "often noted that it is impossible to precisely define 'inadequate’ or 'ineffective’ legal representation or 'to formulate standards which will apply to all cases’ ”. (People v Droz, 39 NY2d 457, 462.) But it is clear that where the question of law is a close one, it would clearly be improper to hold that whenever an attorney’s advice later is found to be erroneous, that result makes his representation a denial of adequate counsel. As our Court of Appeals has said, "We do not imply that errorless counsel is required by the Sixth Amendment” (People v LaBree, 34 NY2d 257, 260-261).
Finally, in this respect, I must note that defendant, in attacking the constitutionality of his predicate felony conviction, makes no allegation that his counsel was unaware of the possibility that he might, on conviction on his plea, have been eligible for youthful offender treatment. Neither does he negate the possibility that his defense counsel elected as a matter of plea bargaining strategy to forego such an application since it might affect adversely his efforts to obtain reduction of the charge to manslaughter in the second degree as well as to obtain for his client the lightest sentence possible.
Defendant’s second attack on the constitutionality of his 1967 conviction is based on the proposition that since People v Drummond (40 NY2d 990) has held CPL 720.10 unconstitutional as a violation of due process insofar as it conditions eligibility for youthful offender treatment on the highest count of the indictment, the provisions of section 913-e of the Code of Criminal Procedure which denied eligibility for youthful offender treatment' to defendant on the basis of the crime charged in the indictment were also unconstitutional. Hence, defendant argues, the 1967 conviction was unconstitutional and cannot serve as the basis for a predicate felony sentencing.
Defendant’s argument with respect to the decision in People v Drummond (supra) requires consideration inasmuch as the ruling of that case would seem to be applicable to section 913-e of the Code of Criminal Procedure based upon my finding that its provisions and those held unconstitutional in CPL 720 base eligibility for youthful offender treatment on the crime for which the defendant is indicted. However, there is nothing in Drummond which indicates that the Court of Appeals intended to apply Drummond retroactively. Indeed, Drum *272 mond’s conviction, unlike those of the other three defendants whose cases were decided therewith, was affirmed on the ground that the constitutional issue had not been raised until the appeal was pending in the Appellate Division and so had been waived. A similar waiver was founded in People v McLaughlin (55 AD2d 1000) for the same reason but not in People v Comicz (59 AD2d 536), where the constitutional question was preserved in a colloquy between the defense counsel and the court at the time of sentencing.
In People v Burgos (NYLJ, Apr. 4, 1978, p 7, col 1) Justice Dontzin was faced with the identical question of law raised by defendant herein. There, as here, the defendant moved for an order adjudging him not to be a predicate felon on the ground that, although the defendant was eligible for youthful offender treatment under section 913-e et seq. of the Code of Criminal Procedure, the minutes and court records were silent with respect to the court’s consideration thereof at the time of his 1969 sentence where defendant had pleaded guilty to burglary in the third degree. That motion was denied by Justice Dontzin on the authority of People v McGowen (42 NY2d 905, 906), wherein the Court of Appeals held that where the defendant made no assertion at the time of sentence that he was entitled to an adjudication of his youthful offender status his right thereto was waived. While it is true that McGowen was decided pursuant to CPL 720.20, Justice Dontzin applied the reasoning behind McGowen to a claim under section 913-e et seq. of the Code of Criminal Procedure, and I hold that this defendant, like McGowen, waived his right to challenge the constitutionality of his 1967 sentence by failing to raise the question of his eligibility for youthful offender treatment at the time of his plea and sentence or by appeal. Furthermore, defendant has failed to deal with the presumption of constitutionality that attaches to every statute including section 913-e of the Code of Criminal Procedure.
Defendant makes two additional arguments based on section 70.06 of the Penal Law. First, with respect to Penal Law section 70.06 (subd 1, par [b], cl [v]), which states that any period of time during which a defendant was incarcerated between the time of commission of the previous felony and that of the present felony be excluded from the 10-year period mandated under clause (v) thereof, defendant argues that this exclusion violates equal protection since such extension un *273 fairly and irrationally differentiates between those receiving suspended sentences or probation and those incarcerated. In People v Orr (57 AD2d 578) this argument was dismissed on the ground that the tolling provisions constitute a rational exercise of legislative judgment in that a prior felon can properly be required to demonstrate his ability to function in society in a lawful manner for IQ years in order to avoid being sentenced as a recidivist. This reasoning by the Legislature as interpreted by the Appellate Division establishes the difference as a rational classification and there is, therefore, no violation of equal protection. Second, defendant argues that it is unconstitutional to have the 10-year period in section 70.06 (subd 1, par [b], cl [v]) of the Penal Law run from the date of sentence rather than the commission of the crime. Defendant cites no cases in support of this attack on that legislative judgment and, inasmuch as I have found the tolling provisions constitutional, I reject this argument, especially since the reasoning of People v Orr (supra) is that the 10-year period was established to see if the released felon has demonstrated his ability to function if society in a lawful manner, and the time of eligibility for release is measured from the date of sentence and imprisonment, not from the date of commission of the crime.
For the foregoing reasons, the motion is denied. I am aware, however, of the fact that the precise question of law raised by the defendant here, is one of novel impression which has not yet been considered by any appellate court in this State and that its resolution here is one which is not free from doubt. One factor which affected this court’s consideration of the question and its ruling that the motion is denied, is an awareness that the denial may well facilitate an appellant review of the issues it involves. Further, since here no question of guilt is involved, only a question as to the severity of the sentence to be imposed, no presumption of innocence which attaches to a criminal defendant is applicable and in such cases, where the issue is solely one of future deterrence and rehabilitation, this court believes that the benefit of doubt should be given to the People.
Defendant’s application to be sentenced as a first offender is denied.