Edward L. MILLER, Petitioner,

v.

David R. HARRIS, Superintendent, et ano., Respondent.

No. 78 Civ. 860.

United States District Court,
S. D. New York.

Nov. 8, 1978.

Edward L. Miller, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., New York City, for Respondent; Paul Milbauer, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner seeks to void a state court judgment of conviction for robbery in the first degree and possession of a dangerous weapon, entered on October 16, 1974 upon a jury verdict, pursuant to which he is now serving a sentence of seven and one-half to fifteen years, imposed on him as a second felony offender. He seeks his release upon a federal writ of habeas corpus based on allegations that his constitutional rights against self-incrimination and to the effective assistance of counsel were violated.

■ As to the first ground, the petition is denied for failure to exhaust state reme-

dies.[1] The only ground presented upon petitioner's state appeal was the alleged inadequate representation by his counsel based essentially on a claim that he was denied a fair trial because counsel failed through lack of preparation and investigation to discover and present a potential defense of temporary insanity at the time of the commission of the crime. The judgment of conviction was affirmed by the Appellate Division,[2] and leave to appeal to the Court of Appeals was denied.[3] Thus, as to this claim, petitioner has exhausted available state remedies.

Briefly stated, on December 29, 1973, petitioner entered a cab, held up the driver with a loaded revolver, demanded and received the driver's money, $15, and then drove off with the taxi. The victim flagged another cab and pursued petitioner, who was observed picking up a "fare." A police car was soon hailed by the victim and within four or five minutes the defendant was apprehended by police officers at gunpoint. The defendant, pointing to the passenger in the rear of the cab, stated that he had nothing to do with the holdup. The petitioner was frisked and a loaded revolver with seven live bullets was taken from a shoulder holster under his right arm. Also recovered from his person was a miniature detective's endowment shield and later three five dollar bills, the amount of currency stolen from the victim. Following his arrest he was taken to the stationhouse where he was advised of his constitutional rights, but he made no statement.

Counsel was assigned to defendant upon his arraignment and represented him throughout the trial. At the Huntley hearing held immediately prior to trial, counsel sought suppression of defendant's statement that the passenger in the back seat had nothing to "do with it" on the ground it was in the nature of an inculpatory statement and was made prior to any warning of

his constitutional rights. The Court denied the motion upon a finding that the statement was volunteered. The case then proceeded to trial on June 18, 1974, six months after petitioner's arrest.

■ At the start of the trial no request was made for an adjournment. It was not until the People had rested its case that petitioner's counsel applied for an adjournment of one week to obtain the testimony of a police captain who allegedly spoke to petitioner at the stationhouse subsequent to the arrest. Counsel stated he was not aware of the conversation or the captain until the day before the trial, when his client informed him of it. When the Court inquired as to the nature of the alleged conversation, the lawyer responded: "The Defendant indicates to me the conversation between him and the captain would indicate . . . he was temporarily insane at the time of the conversation." The Court thereupon responded: "There doesn't seem to be any evidence in the case to indicate that at this time. And, it appears to be an afterthought." The Court then noted that no application had been made prior to the commencement of the trial for adjournment and moreover there had been ample time over a six-month period to obtain the testimony of the captain, had this been desired. The substance of the conversation which allegedly would support a defense of temporary insanity was not stated, nor is anything now set forth to establish that it was of a competent nature, relevant and admissible upon a trial. A word-by-word reading of the trial record leaves no room to doubt that the request for the adjournment at the close of the People's case was a sheer ploy to delay the trial. In any event, the denial of the request for the adjournment was within the Trial Court's discretion and under the circumstances presents no issue of constitutional dimension.[4]

**1.** *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

**2.** 59 A.D.2d 656, 398 N.Y.S.2d 350 (2d Dep't 1977).

**3.** 43 N.Y.2d 798, 402 N.Y.S.2d 1036, 373 N.E.2d 298 (1977).

**4.** *See People v. Oskroba,* 305 N.Y. 113, 111 N.E.2d 235 (1953); *cf. United States ex rel.*

Petitioner, in a general attack upon his trial counsel, stresses that "in spite of the overwhelming evidence of petitioner's guilt, [counsel] failed to explore a possible defense, nor did he subpoena or make a serious effort to obtain witnesses in support of a defense of mental disease," and further "through lack of preparation or investigation his trial counsel failed to discover and present a judicial defense, namely, lack of intent by reason of mental disease or defect." He here contends, as was argued on his State appeal, that the evidence of his guilt was so overwhelming that his "only possible defense . . . was that of lack of intent by reason of mental disease or defect." [5]

█ Petitioner makes various claims to sustain his charge of inadequate investigation and representation with respect to an alleged defense of mental incompetency. First, he latches on to a statement made by his counsel at an arraignment proceeding on January 25, 1974, one month after the commission of the crime and five months before the trial. At that hearing, the Assistant District Attorney recommended no bail be fixed because of defendant's refusal to be fingerprinted. In response, his counsel in urging bail stated: "Defendant indicated to me on the night of the incident he had been to several parties" and "believes he was dosed with LSD not taken with his knowledge." Accordingly he requested that the Court return petitioner to a correction department facility so that he would be available for court appearance from that facility. Thereupon bail was granted. Counsel's statement relating to the granting of bail made one month after the commission of the crime and based upon petitioner's unsubstantiated belief has no bearing on the issue of alleged incompetency. The claim is without substance.

In the ensuing months, up to the day before trial, petitioner never informed his counsel of the alleged conversation with the police captain referred to above. Petitioner does not allege that he ever informed counsel of any friend or relative who might have information of any fact or circumstance bearing on an alleged incompetency defense. Petitioner has not offered an iota of evidence or the name of any witness who in the slightest degree could give credence to such a plea or any fact or circumstance to support it. However, counsel for defendant did consider such a potential defense, for he gave notice to the prosecution on February 28, 1974 of intent to use it. The fact is that upon the trial, counsel questioned each state witness as to petitioner's competency and manner at the time of the holdup and each in substance testified that defendant acted in a rational and normal manner.

█ Petitioner, in further support of his lack of adequate representation defense, alleges that the fact that he picked up a fare after the holdup reflects bizarre conduct, arguing that a normal holdup man would have made his getaway. However, it is not known and he does not state whether he picked up the "fare" to perpetrate a second robbery until intercepted by the police. Petitioner, based upon his claim of bizarre conduct, taxes counsel because he failed to obtain a psychiatric examination and failed to investigate his "capacity" and to subpoena "potential" witnesses who could possibly substantiate petitioner's contention that he was suffering from diminished capacity during the commission of the crime. It may be said that to a greater or lesser degree all criminal conduct is bizarre in its anti-social aspects, but more important, petitioner nowhere alleges he ever gave his lawyer the names of "potential witnesses who could possibly substantiate" an alleged defense, whether family, friends, or any background information. Petitioner in this proceeding has not presented a single fact of past mental history, or any circumstance surrounding his crime which would have required his lawyer to ask for a psychiatric examination. The fact that petitioner was virtually caught redhanded with a loaded weapon minutes after the

---

*Gallo v. Follette,* 270 F.Supp. 507, 511 (S.D.N.Y.1967).

**5.** Appellant's brief, Appellate Division p. 5.

commission of the offense did not automatically require an investigation into his mental competency as of the time of the crime. This is not a case where there was evidence known or which should reasonably have been known of previous mental history which warranted inquiry.[6] There is no such history here. On the facts presented there was no reasonable basis for an attorney to undertake an investigation to dredge up nonexistent evidence or witnesses to support a viable defense of mental incompetency. What petitioner really complains of is that his lawyer did not contrive an untenable defense for him in the face of overwhelming proof of his guilt. This he was not required to do. Counsel was required to give petitioner effective and adequate representation, and a reading of this record leaves no room to doubt that, considering the force of the People's case, he not only had the benefit of adequate representation, but received a fundamentally fair trial.

The petitioner, of course, had it within his power to testify as to any alleged lack of criminal intent or mental incompetency. However, as was also his constitutional right, he decided to rely upon the presumption of innocence and put the State to its proof to establish guilt beyond a reasonable doubt. This the State did; indeed, it may be said the State's proof was sufficient to satisfy a standard of "beyond peradventure of doubt." The decision not to testify was based in no small measure upon the fact that petitioner had a prior criminal record. The decision to rest upon the People's case was a tactical move for which the lawyer cannot be faulted.[7] Petitioner's argument, carried to its logical conclusion, would in the instance of every case of overwhelming evidence against a defendant require counsel to conjure up and present a defense of mental incompetency, no matter how unsupportable, to meet the charge. This indeed would reduce a trial to a "mockery of justice."

---

6. *Cf. Brubaker v. Dickson,* 310 F.2d 30 (9th Cir. 1962) (counsel aware of defendant's history of head injury and extended unconsciousness and of heavy drinking on the night of the homicide); *People v. Bennett,* 29 N.Y.2d 462, 329 N.Y.S.2d 801, 280 N.E.2d 637 (1972) (defendant tried to kill himself a month and a half before the robbery; he had slashed his wrists while in jail; he had required psychiatric treatment two weeks after the robbery, and had been found incompetent to stand trial and committed to Matteawan State Hospital for the Insane where he remained almost a year).

7. *Moran v. Hogan,* 494 F.2d 1220, 1223 (1st Cir. 1974); *United States v. Gonzalez,* 321 F.2d 638, 639 (2d Cir. 1963); *Grimes v. United States,* 444 F.Supp. 78, 81 (S.D.N.Y.1977), *aff'd in relevant part,* 582 F.2d 1271 (2d Cir. 1978).