THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LEMUEL SMITH, Appellant.

Third Department, July 29, 1982

APPEARANCES OF COUNSEL

*Douglas P. Rutnik* (*Frank V. Bifera* of counsel), for
appellant.

*Sol Greenberg, District Attorney* (*George H. Barber* of
counsel), for respondent.

**OPINION OF THE COURT**

YESAWICH, JR., J.

On November 24, 1976, the dead bodies of Robert Hed-
derman and Margaret Byron were discovered at the Hed-
derman Religious Shop in Albany. Both victims had been
stabbed several times in the chest and their throats slit. An
intensive investigation ensued. Several days later defen-
dant Smith was questioned, but released. However, by the
fall of 1977, evidence implicating Smith began to surface.

Meanwhile, in August, 1977, defendant, who was suspected of involvement in crimes in Schenectady and Saratoga Counties, was indicted by a Schenectady County Grand Jury for the kidnapping and attempted armed robbery of one Marlene Maggio. On September 16, 1977, Sanford Rosenblum, defendant's retained attorney, met with the District Attorneys of Schenectady, Albany and Saratoga Counties in an attempt to negotiate a plea bargain concerning crimes defendant had allegedly committed in all three jurisdictions, including Albany County homicides for which defendant had not yet been indicted. Rosenblum indicated defendant's willingness to plead guilty in exchange for concurrent sentences of 25 years to life on all the charges. This offer was rejected. At the same meeting, in the interest of solving three homicides in his county, the Albany County District Attorney apparently agreed to underwrite the cost of continuing psychiatric assistance which Rosenblum had arranged for his client.

In March of 1978, defendant indicated to his psychiatrist that he was willing to talk to police about various crimes he had committed. Rosenblum agreed to allow defendant to be questioned under certain conditions. At that meeting, held March 5, 1978, it was stipulated that all present except Smith and his attorney were to be considered agents of the Schenectady County District Attorney's office, and no information obtained at the meeting was to be disclosed without their written consent. The stipulation did allow the Albany County District Attorney, who was not present, to be informed of the general substance of defendant's statements.

Defendant gave a lengthy statement recounting several murders he had committed, including those in the Hedderman Religious Shop. The following day, Rosenblum telephoned the Albany County District Attorney and informed him that Smith had made damaging admissions.

The Schenectady County case was tried in July of 1978 by the court without a jury, and Smith, despite skillful and thorough representation by his counsel, was found guilty.[1] The defense theory that Smith was suffering from a mental disease or defect was supported by the testimony of Dr. Zvi

---

1. On appeal, this court affirmed, without opinion (81 AD2d 1046).

Klopott, a psychiatrist. Dr. Klopott testified that defendant was suffering from a delusion that his brother John (who died in infancy) in effect lived within defendant and was responsible for the crimes defendant had committed. In detailing Smith's psychiatric history, Dr. Klopott drew upon the statement given by Smith at the March 5, 1978 meeting, wherein he blamed "John" for the Hedderman and Byron murders.

Then, in October, 1978, the Albany County District Attorney's office subpoenaed Dr. Klopott to testify before an Albany County Grand Jury. The transcript and tapes of the March 5 meeting were also subpoenaed, and Smith's indictment for the November 24, 1976 killings followed.

The attempt by defense counsel (now the Albany County Public Defender) to suppress, *inter alia,* the transcript and tapes of the March 5 meeting was denied. Following a jury trial, in which the defense of mental disease or defect was again presented, defendant was convicted. He received consecutive sentences of 25 years to life for each murder.

Chief among defendant's contentions on appeal is his assertion that the court erred in refusing to suppress the transcript of the March 5 meeting. He argues that his waiver of the right against self incrimination was the product of ineffective representation. He also maintains that these admissions were obtained by promises which the prosecution later failed to fulfill.

Whether a defendant's counsel was adequate requires an analysis of the facts of each case (*People v Aiken,* 45 NY2d 394). Thus attorney Rosenblum's actions on March 5, 1978 must be viewed in light of the facts as they then existed. He was representing a predicate felon, facing the serious charges of kidnapping and robbery in a case where the prosecution's proof was overwhelming and believable denial of his participation in the crime an impossibility.[2] Moreover, he knew his client was a suspect in several brutal murders in the Albany area and that defendant sorely needed psychiatric help. In addition, Smith had

---

2. Defendant was arrested while still holding the victim, who had undergone an ordeal lasting several hours.

shown a willingness to admit his guilt if he could be convinced it was he who was responsible, and not "John".

These circumstances dictated the insanity defense. To develop this defense, the psychiatrist was obliged to testify concerning the history of defendant's alleged delusion, which necessarily included defendant's version of the various murders. But by allowing the psychiatrist to testify, defendant waived his physician-patient privilege (*People v Bloom,* 193 NY 1, 10; see, also, *People v Edney,* 39 NY2d 620; *Maggio v State of New York,* 88 AD2d 1087), exposing Smith to possible prosecution for several murders. However, foregoing the insanity defense in the Schenectady case would assure defendant's conviction on serious charges, and being a prior felon he was certain to receive a substantial sentence. Moreover, this defense, if successful in the Schenectady case, could be utilized to enable defendant to avoid conviction for the Albany County crimes, including the Hedderman-Byron murders. At that point in time, other evidence that Smith had committed these slayings appeared substantial.

In view of all these considerations, defendant had essentially nothing to lose by speaking to the authorities at the March 5 meeting. Indeed, only by offering to co-operate could he keep alive his slim hope of obtaining a plea bargain. Counsel's decision to allow defendant to talk to the authorities was part of a reasonably employed trial strategy and should not now be the object of second guessing via hindsight (see *People v Aiken,* 45 NY2d 394, 399, *supra*). Moreover, since Smith's incriminating admissions would have come to light in any event, we fail to see how he was harmed by his attorney's claimed incompetence.

Nor did the prosecution fail to abide by its promises. The record of the March 5 meeting was not used against defendant until after the defense psychiatrist had referred to it in the Schenectady County case. This public use constituted a waiver of any right defendant otherwise possessed to keep the transcript secret.

We have examined defendant's remaining arguments and find them to be without merit.

The judgment should be affirmed.

MIKOLL, J. (dissenting). I respectfully dissent. Defendant's conviction should be reversed and a new trial granted because of the failure of defense counsel to afford defendant competent and effective legal assistance.

The Court of Appeals in *People v Droz* (39 NY2d 457, 462) commented on what constitutes inadequate or ineffective legal representation: "it is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense (*People v Bennett* [29 NY2d 462]) and who is familiar with, and able to employ at trial basic principles of criminal law and procedure (*People v LaBree,* 34 NY2d 257; cf. *People v Jones,* 25 NY2d 637). Whether counsel has adequately performed these functions is necessarily a question of degree, in which cumulative errors particularly on basic points essential to the defense, are often found to be determinative (see, e.g., *People v Bennett, supra; People v LaBree, supra*)."

I cannot agree with the majority's conclusion that defense counsel's advice to defendant to participate in the March 5 conference with the District Attorney and police officials, which resulted in his indictment for murders in Albany County, was part of any reasonably intelligent stratagem to effect a plea bargain for defendant. I also do not agree with the conclusion that the error here was somehow made harmless because the information secured at the March 5 meeting might have surfaced in any event in his murder trial in Schenectady, thus exposing defendant to possible further prosecution.

Defense counsel's advice to defendant that anything he said at the March 5 meeting could never be used against him and that he was in no jeopardy in making the statements was patently wrong. No attorney of competence would have come to such a conclusion or ventured such advice. Further, defense counsel's belief that the two New York State Police present at the interrogation were authorized by the Albany District Attorney's office to grant immunity to defendant had no basis in fact and reveals defense counsel's total inability to comprehend the dire consequences to defendant of his actions. Adding to the

magnitude of his legal error was counsel's failure to hold the District Attorney to the agreement both had made that in no event was defendant to be questioned by the District Attorney about cases in various counties where no indictments had yet been returned against defendant. Not only was defendant questioned about events in Albany County but defense counsel remained mute and permitted the questioning to continue.

The inculpatory statements made on March 5 regarding events occurring in Albany resulted in defendant's indictment and subsequent conviction of the crimes appealed here. Based on the failure to afford defendant effective counsel, the judgment should be reversed and a new trial ordered.

KANE, J. P., MAIN and CASEY, JJ., concur with YESAWICH, JR., J.; MIKOLL, J., dissents and votes to reverse in a separate opinion.

Judgment affirmed.