OPINION OF THE COURT
Jasen, J.
Defendant, convicted of two murders and sentenced to consecutive terms of 25 years to life for each murder, appeals. He asserts that on the jury trial he was deprived of the effective assistance of counsel and that a stipulation designed to keep secret a transcript revealing defendant’s participation in other crimes was breached.
On November 24, 1976, at approximately 3:00 p.m., Robert Hedderman and Margaret Byron were murdered while working at the Hedderman Religious Shop located at *160 50 Columbia Street in Albany. The murderer slit both victims’ throats after stabbing them several times in the chest.
During the course of the intensive investigation which followed these murders, the defendant was questioned and released. Upon further investigation, however, evidence came to light implicating defendant. Mr. William Weber told the police that he saxy a “wild-eyed” black male approximately six feet tall in Hedderman’s store on November 24, 1976, standing near the body of Margaret Byron. Later, after being shown a lineup photograph, Mr. Weber identified defendant as that man. Maureen Toomey informed the police that she observed a black man leaving the Hedderman Religious Shop at approximately the time of the slayings. In September, 1977, she was taken to police headquarters where she was shown a lineup photograph containing pictures of six men and asked whether she recognized the man she saw leaving the Hedderman store that day. She pointed to defendant’s photo. Also in September, 1977, Lieutenant Murray of the Albany Police Department, while conducting an authorized search of a building where defendant had been employed, discovered one of defendant’s sweaters in a closet. A hair found on the sweater was sent to the FBI laboratory in Washington for testing. The FBI report indicated that the hair found on defendant’s clothing was that of the deceased, Margaret Byron.
Meanwhile, defendant had been indicted by a Schenectady County Grand Jury for the kidnapping and attempted robbery of Marlene Maggio. Defendant had been arrested several hours after the abduction while still holding the victim. In September, 1977, he retained counsel to represent him on the Schenectady County charges.
Thereupon, his counsel met with the District Attorneys of Schenectady, Albany and Saratoga Counties in an attempt to negotiate a plea bargain concerning crimes defendant had allegedly committed in all three jurisdictions, including the Hedderman-Byron homicides for which defendant had not yet been indicted. The attorney’s proposal *161 that defendant receive concurrent sentences of 25 years to life in satisfaction of all charges was rejected. At the same meeting, it was agreed that the Albany County District Attorney’s office would assume responsibility for the cost of continuing psychiatric assistance which defendant could not afford but which defense counsel had arranged for defendant through the Schenectady County District Attorney.[1]
After defendant indicated to his psychiatrist, Dr. Camperlengo, and a psychiatric social worker, Diane Kassel, that he was willing to speak to the police, a meeting was arranged for March 5, 1978. Defense counsel agreed to allow defendant to be questioned at that meeting, providing that certain conditions were met. Pursuant to defense counsel’s demands, a stipulation was entered into whereby all persons present at the meeting, except defendant and his attorney, were to be considered agents of the Schenectady County District Attorney’s office and all statements made thereat were to be kept secret. No disclosure was permitted without the defendant’s and his counsel’s written consent. The stipulation did allow the Albany County District Attorney, who was not notified of the meeting and did not appear, to be informed of the general substance of defendant’s statements.[2]
At the meeting, defendant admitted committing several murders, including those at the Hedderman Religious *162 Shop in Albany. The following day, defense counsel and Schenectady County Assistant District Attorney Carey notified Albany County District Attorney Greenberg of the meeting and the fact that defendant had made incriminating statements.
A nonjury trial was held in Schenectady County Court in July, 1978. While preparing for that trial, defense counsel, who decided to assert an insanity defense on defendant’s behalf, gave the transcript of the March 5 meeting to Dr. Zvi Klopott, a psychiatrist he planned to use as a defense witness. At the trial, Dr. Klopott testified that the defendant was suffering from a delusion that his deceased brother John lived within him and was responsible for the crimes that defendant had committed. He also testified that, according to the transcript furnished by defense counsel of the March 5 meeting, defendant admitted killing both Robert Hedderman and Margaret Byron in Albany.[3] The trial concluded on July 21, 1978, and the defendant was found guilty.
On July 27, 1978, an Albany County Grand Jury indicted defendant for the murders of Robert Hedderman and *163 Margaret Byron, and in October, 1978 the Albany County District Attorney’s office subpoenaed the transcript and tapes of the March 5, 1978 meeting. At a suppression hearing held prior to his Albany County murder trial, defendant unsuccessfully attempted to suppress the transcript and tapes, Maureen Toomey’s identification of defendant and the hair found on defendant’s clothing. The case then proceeded to trial where defendant’s attorney again presented the insanity defense. The defense failed and defendant was convicted and sentenced to consecutive sentences of 25 years to life for each murder.
On this appeal, defendant contends that he was deprived of the effective assistance of counsel, that the trial court erred in its Sandoval ruling, that unqualified opinion testimony was improperly admitted into evidence and that the statements he made at the March 5 meeting were not given voluntarily and should, therefore, have been suppressed. In asserting this last contention, defendant raises a number of overlapping issues involving allegations that the Albany County District Attorney was bound by the March 5 stipulation, that the Schenectady County District Attorney violated the terms of that stipulation, that defendant’s statements were not the product of a rational intellect and free will and that defendant inadvertently waived his right against self incrimination due to the ineffective assistance of his counsel.
Preliminarily, we note that the record supports the factual determination by the courts below that defendant’s statements were given freely and voluntarily and not as a result of improper police inducement. That issue, therefore, is beyond this court’s scope of review. (People v Taylor, 57 NY2d 729; cf. People v Harrison, 57 NY2d 470.) Furthermore, with respect to defendant’s claim of mental incompetence to make the statements, defendant was found to be mentally competent at both his Schenectady and Albany County trials. The affirmance of those factual determinations, which are supported by the record, similarly precludes review by this court.
Defendant’s contention that the Schenectady County District Attorney breached the terms of the March 5 stipulation is wholly without merit. Pursuant to the terms of the *164 stipulation, Assistant District Attorney Carey promised not to disclose the details of defendant’s statements without the written consent of both defendant and his attorney. Carey scrupulously honored his promise. Contrary to defendant’s assertions, the Schenectady County District Attorney’s office did not improperly allow Albany County District Attorney Greenberg to obtain a copy of defendant’s March 5 statements. The transcript was lawfully subpoenaed by District Attorney Greenberg and only after defendant allowed certain of its contents to be publicly disclosed by Dr. Klopott during his testimony at defendant’s prior Schenectady County trial. By permitting Dr. Klopott to disclose the details of those admissions, as he necessarily had to in order to support defendant’s insanity defense, the defendant not only waived his physician-patient privilege (People v Edney, 39 NY2d 620; People v Al-Kanani, 33 NY2d 260), but also made that information a matter of public record. Defendant cannot be heard to claim, therefore, that the Schenectady County District Attorney breached the agreement to keep defendant’s incriminating statements secret. There is not a shred of evidence to indicate that the Schenectady County District Attorney’s office disclosed any of the details of the March 5 meeting to law enforcement officials, prosecutorial agencies or the public prior to the transcript of that meeting being subpoenaed by the Albany County District Attorney’s office.
The defendant argues alternatively that the Albany County District Attorney was bound by the March 5 stipulation and, thus, should not have been allowed to use defendant’s admissions against him at the HeddermanByron murder trial. In support of this argument, defendant contends that Diane Kassel, the psychiatric social worker who was present at the March 5 meeting and was a party to the stipulation, was an agent of the Albany County District Attorney’s office and, therefore, bound that agency to abide by the stipulation.[4] While it is true that when asked by the Schenectady County District Attorney to assume *165 financial responsibility for defendant’s continuing psychiatric care, including Dr. Camperlengo’s and Diane Kassel’s salaries, the Albany County District Attorney’s office agreed, this alone is insufficient to create an agency relationship. To the contrary, a review of the record in this case makes it abundantly clear that no such relationship existed.
It is undisputed that District Attorney Greenberg was never informed that the March 5 meeting was to take place. Defendant’s attorney testified that he specifically intended to exclude the Albany County District Attorney’s office from the meeting because of some undefined antipathy he had towards Albany County Assistant District Attorney Daniel Dwyer. Furthermore, Diane Kassel testified that it was defendant’s attorney that directed her to work under the supervision of Dr. Camperlengo and Dr. Camperlengo testified that Kassel was brought into the case by defendant’s attorney. Also noteworthy is the testimony of Assistant District Attorney Carey that when he notified District Attorney Greenberg on March 6 that the meeting had taken place and that he could not reveal the details thereof, Greenberg became upset and would not consent to the stipulation. Finally, District Attorney Greenberg testified that Diane Kassel appeared at the meeting as a representative of defendant’s attorney. In light of this undisputed testimony and the explicit classification of Diane Kassel as an agent of the Schenectady County District Attorney’s office in the stipulation entered into pursuant to defense counsel’s demand, there can be little doubt that Diane Kassel was not acting as an agent of the Albany County District Attorney’s office and, therefore, had no authority, actual or apparent, to bind that office in any way.
Turning then to defendant’s contention that he was denied his constitutional right to the effective assistance of counsel, we must consider the facts and circumstances as they existed at the time of the representation in order to evaluate the quality of the representation afforded the defendant. In doing so, it is important to avoid confusing mere losing tactics with truly ineffective representation *166 and to avoid attributing undue significance to retrospective analysis. The constitutional requirement of effective assistance of counsel will be met where “the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation”. (People v Baldi, 54 NY2d 137, 147.)
Applying this standard of review, we conclude that defendant was accorded effective assistance of counsel.
Defendant was a predicate felon facing the serious charges of kidnapping and robbery in a case where the prosecution’s * proof was overwhelming. Indeed, defendant was apprehended while still holding his victim. As a predicate felon, defendant faced a lengthy sentence if he was convicted. Furthermore, defense counsel knew that his client was a suspect in several brutal murders committed in the Albany area. This knowledge, coupled with the fact that defendant was apparently in need of and had requested psychiatric help, made it incumbent upon defense counsel to attempt to obtain a psychiatric evaluation for the purpose of helping defendant personally and, from a legal standpoint, to establish an insanity defense.
There can be little doubt that defense counsel’s decision to structure defendant’s defense around a claim of mental disease or defect was a proper one. (See People v Bennett, 29 NY2d 462.) While not disputing this fact, defendant contends that his attorney made a serious mistake in advising him to speak with law enforcement authorities on March 5 because there was nothing to be gained by doing so. To the contrary, we believe that it was entirely reasonable for defendant’s attorney to assume that by co-operating with the police he might revive the hope that a favorable plea might be accepted. Although there was no guarantee that this would happen, the truth of the matter was that defense counsel had precious few alternatives. Indeed, as things stood at the time, defendant had nothing to lose by speaking to the authorities. He was a predicate felon facing overwhelming proof of guilt on the kidnapping and robbery charges in Schenectady County and was facing substantial, if not overwhelming, evidence with respect to the Hedderman-Byron murders. Moreover, in light of defense *167 counsel’s reasonably conceived plan to assert an insanity defense at the Schenectady County trial and necessarily to call Dr. Klopott to testify to the fact that defendant admitted committing the various murders but placed responsibility for them on his deceased brother John, the secrecy to be attached to the March 5 meeting became of secondary importance. Nevertheless, defendant’s attorney took steps to insure the secrecy of defendant’s statements by insisting on the stipulation. While it certainly would have been preferable to have had the Albany County District Attorney personally consent to the stipulation, to say that he would have done so, if asked, is rank speculation. That the stipulation ultimately proved ineffective in preventing the Albany County District Attorney from using the March 5 statements does not render defense counsel’s otherwise thoughtful and reasonably employed defense strategy ineffective. (People v Aiken, 45 NY2d 394, 399.)
In People v Baldi (54 NY2d 137, supra), a somewhat similar case, we held that an attorney provided effective representation to his client when, in an effort to strengthen the defendant’s insanity defense, the attorney took the stand and testified that his client had committed a large number of sexual assaults and murders. There, as here, defense counsel had thoroughly reviewed the facts of the case and the law relevant to his client’s defense. (People v Bennett, 29 NY2d 462, 466, supra.) In light of the overwhelming evidence of defendant’s guilt, we held that counsel’s defense strategy was reasonable. Similarly, we hold today that defendant’s attorney provided meaningful representation under the circumstances when he permitted defendant to speak with the authorities on March 5 and allowed Dr. Klopott to testify at the Schenectady County trial concerning statements made by defendant at that meeting.
We now turn our attention to defendant’s remaining claims of error. The record demonstrates that the trial court, at the pretrial Sandoval hearing, exercised its discretion in ruling that five of defendant’s prior convictions could be inquired into on cross-examination should defendant choose to testify. Indeed, the Judge specifically advised defense counsel that in reaching his decision he had *168 considered the prejudicial effect that evidence of those convictions would have on the defendant. The ruling, therefore, cannot be said to constitute an abuse of discretion as a matter of law. (People v Mackey, 49 NY2d 274, 281; People v Sandoval, 34 NY2d 371, 378.) Inasmuch as the record demonstrates that the court exercised its discretion, appellate review ends in the intermediate appellate court. (People v Pollock, 50 NY2d 547, 550.)
Defendant also cites as error the trial court’s ruling allowing Dr. Jack Neville-Phillips Davies, a professor of pathology at Albany Medical College, to give his opinion as to whether the deaths of Robert Hedderman and Margaret Byron were the results of a maniacal attack. Defendant argues that Dr. Davies was not trained in psychiatry and was, therefore, not qualified to offer this testimony, which, according to defendant, constituted an opinion as to defendant’s mental state at the time of the slayings.
The record shows, however, that Dr. Davies did not testify as to defendant’s mental condition. After testifying that he had been involved in more than 40,000 autopsies, two to three thousand of which involved homicides, Dr. Davies was asked to define a maniacal stabbing. He responded that a pattern of widely distributed knife wounds is indicative of a maniacal stabbing. Dr. Davies further testified that a maniacal stab wound pattern was not found on the bodies of either Robert Hedderman or Margaret Byron. Thus, it is clear that Dr. Davies was testifying about the nature of the attack, a subject well within his area of competence, and not to defendant’s state of mind. There was no error in allowing Dr. Davies to so testify.
For all of the above reasons, the order of the Appellate Division should be affirmed.

. The Albany County District Attorney apparently agreed to this arrangement in hopes that with proper treatment defendant would realize that it was he and not his brother John (who died in infancy but according to defendant lived within him) who was responsible for the murders. If the psychiatrist was successful, the District Attorney hoped to obtain a guilty plea from defendant.

. Schenectady County Assistant District Attorney Carey reiterated the stipulations for the record. It was agreed, in pertinent part, as follows:
“Today’s proceeding is entirely secret. The only persons who are aware of the proceeding are those present in this room and the District Attorney of Schenectady County, who is not present today. Everybody here has been sworn to secrecy. There will be no releasing of either the fact that this meeting is taking place or the substance of what has taken place today, with the exceptions that I’ll state later on. The proceedings are being recorded on tape. There are two tapes being made, one is an original which will be sealed at the end of the proceeding. The other one is for the purpose of Mr. McConchie, in the event that he misses anything on the stenographic minutes he’ll be able to review the second tape, and the tape is for the purpose of insuring the accuracy of the stenographic transcript. The stenographic transcript and the two tapes will be the *162 property of the Schenectady County District Attorney. They will be in the sole and exclusive possession of the Schenectady County District Attorney. They will not be available to anyone else without the written permission of both Mr. Smith and his attorney, at that time. All the persons present, with the exception of Mr. Rosenblum and Mr. Smith, are to be considered the agents of the Schenectady County District Attorney’s Office and will abide by all the stipulations which are entered into between Mr. Rosenblum and myself. In no * * * the transcript or the tapes cannot be used in any form without Mr. Smith’s and his attorney’s permission. I will be permitted to discuss the matter with the District Attorneys of Montgomery County, Saratoga County and Albany County as to the substance of the fact that this meeting has taken place and to the general substance of the conversation, but I’ll reveal no other information without Mr. Smith and Mr. Rosenblum’s consent.
“Mr. Smith is not waiving any of his fifth amendment privileges by being here today.” Those present at the meeting were: Lemuel Smith, his attorney, Diane Kassel, Captain Robert Scheeman of the New York State Police, Joseph Carey, Schenectady County District Attorney’s office, and a court reporter, Lynn McConchie. From time to time, four State Police investigators came in and out of the room; the investigators were R. T. Anslow, J. A. Manello, H. J. Malee and T. O. Rehm. In another room monitoring the tape recorder was Investigator Richard Gannon of the State Police.

. During the cross-examination of Dr. Klopott, the prosecutor sought to introduce into evidence the transcript of the March 5, 1978 meeting. Judge Stroebel, however, refused to allow its admission on the ground that the Schenectady County District Attorney’s office had agreed, pursuant to the March 5 stipulation, that the particulars of that meeting would not be disclosed unless defendant and his attorney gave their permission in writing.

. Defendant has apparently abandoned his argument raised below, that Captain Scheeman and Investigator Gannon, both of the New York State Police, were also agents of District Attorney Greenberg. In his brief to this court, defendant states that “the record of the instant case fails to reveal that either Captain Scheeman or Investigator Gannon were acting at any time as the agents of the Albany County District Attorney’s Office.”