People v Tiger (2022 NY Slip Op 04568)

People v Tiger

2022 NY Slip Op 04568

Decided on July 13, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 13, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
REINALDO E. RIVERA
CHERYL E. CHAMBERS
DEBORAH A. DOWLING, JJ.

2021-00477
 (Ind. No. 215/12)

[*1]The People of the State of New York, respondent,
v
Natascha Tiger, appellant.

Larkin Ingrassia, LLP, Newburgh, NY (John Ingrassia and Brittany A. Kessler of counsel), for appellant.
David M. Hoovler, District Attorney, Goshen, NY (Robert H. Middlemiss and Edward D. Saslaw of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant, by permission, from an order of the County Court, Orange County (Robert H. Freehill, J.), dated December 14, 2020, which, upon a decision of the same court dated October 23, 2020, made after a hearing, denied that branch of her motion which was pursuant to CPL 440.10 to vacate, on the ground of ineffective assistance of counsel, a judgment of the same court (Jeffrey G. Berry, J.) rendered October 17, 2012, convicting her of endangering the welfare of a vulnerable elderly person, or an incompetent or physically disabled person, in the first degree, upon her plea of guilty, and imposing sentence.
ORDERED that the order is reversed, on the law, on the facts, and as a matter of discretion in the interest of justice, that branch of the defendant's motion which was pursuant to CPL 440.10 to vacate, on the ground of ineffective assistance of counsel, the judgment is granted, the judgment is vacated, the plea of guilty is vacated, and the matter is remitted to the County Court, Orange County, for further proceedings.
The defendant, a licensed practical nurse, was hired to provide home care for a physically disabled child. On November 23, 2011, the defendant bathed the child and noticed that the child's skin was red and peeling. After the child's mother returned home, the defendant accompanied the mother and child to the pediatrician's office. That same day, the child was taken to Westchester Medical Center and received treatment for a period of five weeks.
On November 30, 2011, the defendant was interviewed by an investigator from the Orange County Child Abuse Task Force, after which the defendant signed a confession, and wrote a letter of apology to the child's parents. Thereafter, the defendant was indicted on charges, inter alia, of assault in the second degree, and endangering the welfare of a vulnerable elderly person, or an incompetent or physically disabled person, in the first and second degrees on the theory that she recklessly bathed the child in hot water, causing the child to sustain thermal burns.
On July 24, 2012, the defendant, represented by counsel, entered a plea of guilty to one count of endangering the welfare of a vulnerable elderly person, or an incompetent or physically disabled person, in the first degree. During her plea allocution, the defendant stated that before bathing the child, she tested the water and "it was not that hot." After an off-the-record discussion, and upon questioning by the County Court, the defendant agreed that she "made an error" when she [*2]tested the water temperature, and that she was "reckless." The court accepted her plea of guilty, and sentenced the defendant to four months of incarceration in the Orange County Jail, to be followed by five years of probation. The defendant completed serving her sentence.
In April 2014, the defendant moved pursuant to CPL 440.10(1)(h) to vacate the judgment of conviction on the grounds that she was actually innocent and that she was deprived of the effective assistance of counsel. With respect to her claim of ineffective assistance of counsel, the defendant contended, inter alia, that her former attorney failed to secure pertinent medical records, such as the results of a biopsy performed on the child, and that her former attorney failed to retain a medical expert.
By order dated January 12, 2015, the County Court denied the defendant's motion without a hearing. By decision and order dated March 1, 2017, this Court reversed the order of the County Court (see People v Tiger, 149 AD3d 86), determining that: the defendant's plea of guilty did not absolutely bar her from maintaining a freestanding actual innocence claim under CPL 440.10(1)(h); the defendant had made a prima facie showing of actual innocence; and the defendant was entitled to a hearing on both the actual innocence and ineffective assistance of counsel claims. This Court remitted the matter to the County Court for a fact-finding hearing and, thereafter, a new determination of the defendant's motion (see People v Tiger, 149 AD3d at 113).
By order dated August 15, 2017, the Court of Appeals granted the People's motion for leave to appeal (see People v Tiger, 29 NY3d 1135). In their brief to the Court of Appeals, the People argued that a claim of actual innocence does not lie under CPL 440.10(1)(h), but they did not challenge the portion of this Court's decision and order which reversed and remitted the matter for a hearing on the defendant's ineffective assistance of counsel claim (see People v Tiger, 32 NY3d 91, 93, 98). On June 14, 2018, the Court of Appeals reversed this Court's decision and order insofar as appealed from and denied that branch of the defendant's motion which was based on the claim of actual innocence, holding, in pertinent part, that "where the defendant has been convicted by guilty plea, there is no actual innocence claim cognizable under CPL 440.10(1)(h)" (id. at 103).
Between November 2019 and November 2020, the County Court held an evidentiary hearing on that branch of the defendant's motion which was to vacate the judgment on the ground of ineffective assistance of counsel. By order dated December 14, 2020, upon a decision dated October 23, 2020, the court denied that branch of the defendant's motion. The defendant appeals, and we reverse.
"A defendant has the right to effective assistance of counsel before deciding whether to plead guilty" (People v Tindley, 202 AD3d 838, 838; see People v Flinn, 188 AD3d 1093, 1094). "Under the federal standard for ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness, and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (People v Bodden, 82 AD3d 781, 783, quoting Strickland v Washington, 466 US 668, 694; see People v Tindley, 202 AD3d at 838-839). "Under the New York standard, a court must examine whether the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Tindley, 202 AD3d at 839 [internal quotation marks omitted]; see People v Oliveras, 21 NY3d 339, 346; People v Baldi, 54 NY2d 137, 147).
"In cases asserting ineffective assistance of counsel in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial, or that the outcome of the proceedings would have been different" (People v Tindley, 202 AD3d at 839 [internal quotation marks and citations omitted]; see People v Parson, 27 NY3d 1107, 1108; People v Saunders, 193 AD3d 766, 768; People v Flinn, 188 AD3d at 1094).
Defense counsel's "investigation of the law, the facts, and the issues that are relevant to the case" is "[e]ssential to any representation, and to the attorney's consideration of the best course [*3]of action on behalf of the client" (People v Oliveras, 21 NY3d at 346; see People v Tindley, 202 AD3d at 839). "Accordingly, a defendant's right to representation entitles him or her to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself [or herself] time for reflection and preparation for trial" (People v Tindley, 202 AD3d at 839 [internal quotation marks omitted]; see People v Oliveras, 21 NY3d at 346; People v Bennett, 29 NY2d 462, 466; People v Corchado, 175 AD3d 705, 708).
Here, despite references in the hospital records indicating that a skin biopsy was ordered, the defendant's former counsel failed to obtain the skin biopsy pathology report, which would have supported the conclusion that the child's skin condition was caused, not by thermal burns, but by toxic epidermal necrolysis (hereinafter TEN), a condition associated with an allergic reaction to a medication that the child had been taking. In this regard, the pathology report, which was prepared by three pathologists, set forth that the skin biopsies were performed the day after the child was admitted to the hospital, and that the child's skin condition was "consistent with a diagnosis" of TEN if no oral lesions were present, or Stevens Johnson Syndrome (hereinafter SJS) if associated with oral lesions. An addendum to the report indicated that the clinical data ruled out SJS, and, therefore, implicated TEN as the diagnosis.
The defendant also demonstrated that her former counsel failed to consult a medical expert, or take steps to either seek the services of a court-appointed medical expert, or find a source of funding to secure the services of a medical expert before counseling the defendant to plead guilty. At the hearing, the defendant offered the expert testimony of Bruce Farber, a physician board-certified in the fields of internal medicine and infectious diseases, who reviewed all the medical records, including the subject pathology report. He opined that, based upon his review of medical records, as well as the pathology report, the child's skin condition was caused by TEN, and not thermal burns. He testified that the medical records, including the hospital chart, showed that the various medical providers, including a pediatrician, emergency room physician, dermatologist, infectious disease expert, and a burn fellow formulated differential diagnoses including SJS, TEN, or staphylococcal scalded skin syndrome, none of which included thermal burns.
Notably, Farber testified that a board-certified dermatologist who treated the child documented a positive "Nikolsky sign," which was a finding seen with immunological skin reactions, and not thermal burns. He also testified that, based upon his review of the photographs of the child, the child's wounds appeared to grow and spread for days after her hospital admission, which was inconsistent with a diagnosis of thermal burns.
The defendant testified that the reason that she pleaded guilty was based upon her counsel's advice that nothing in the medical records supported her defense. The defendant credibly testified that, had she known that there was a pathology report diagnosing the child with TEN, she would not have pleaded guilty since "that was the proof that I needed to show that I did not burn" the child.
Insofar as the defendant established that her former counsel "did not fully investigate the case and did not collect the type of information that a lawyer would need in order to determine the best course of action" (People v Oliveras, 21 NY3d at 348), she demonstrated that her attorney's performance fell below an objective standard of reasonableness. Moreover, the defendant demonstrated that, viewing the evidence in totality and as of the time of the representation, and based upon former counsel's failure to adequately investigate the facts and seek an medical expert consultation, former counsel failed to provide meaningful representation.
Contrary to the County Court's determination, the evidence adduced at the hearing sufficiently established that there is a reasonable probability that, but for her attorney's errors in failing to obtain the pathology report and seek an expert consultation, the defendant "would not have pleaded guilty and would have insisted on going to trial" (People v Tindley, 202 AD3d at 839 [internal quotation marks and citations omitted]; see People v Parson, 27 NY3d at 1108; People v Saunders, 193 AD3d at 768; People v Flinn, 188 AD3d at 1094).
Accordingly, the County Court should have granted that branch of the defendant's [*4]motion which was to vacate the judgment on the ground of ineffective assistance of counsel. We therefore reverse the order and remit the matter to the County Court, Orange County, for further proceedings consistent herewith.
BARROS, J.P., RIVERA, CHAMBERS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court