THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN DIETZ, Appellant.

Fourth Department, March 27, 1981

APPEARANCES OF COUNSEL

*Richard H. Speranza (Paul Crapsi* of counsel), for appellant.

*Russell D. Coogan (Shavasp Hanesian* of counsel), for respondent.

**OPINION OF THE COURT**

SCHNEPP, J.

Defendant and Guyon Fisher were charged with the crimes of second degree arson and criminal mischief incident to the burning of the Eugene Boesken home located at 206-208 57th Street in Niagara Falls on September 16, 1978 and third degree arson and second degree criminal mischief incident to the burning of an unoccupied building located at 144 56th Street in Niagara Falls on May 20, 1976. Defendant appeals from judgment of conviction of all crimes charged entered upon a jury verdict claiming, *inter alia*, that there should be a reversal and a new trial because

he was deprived of his constitutional right to the effective assistance of counsel.

The People's case was based upon the testimony of Guyon Fisher who admitted that he set both fires but claimed that he did so under pressure from defendant and at his urging. Fisher testified that the fire at 144 56th Street was racially motivated: the owner had contracted to sell the house to a black family and defendant did not want blacks moving into the neighborhood. According to Fisher burglary charges were pending against him and defendant promised that his father would insure a sentence of probation for him if he set fire to the house. With regard to the Boesken fire, Fisher testified that defendant wanted it set on fire because of an argument earlier that day between Barry Boesken, Jr., and defendant, who threatened to have his father revoke Fisher's bail bond unless he set the blaze.

Defendant contends that the record is replete with errors committed by his retained trial counsel which, taken as a whole, amount to ineffective assistance of counsel so as to have deprived him of a fair trial. Specifically, defendant claims that his counsel erred in eliciting testimony from prosecution witnesses Eugene Boesken, Lieutenant Leonard Smith, Guyon Fisher, and Mike Castille implicating him in several uncharged arsons. The People contend that this was a deliberate trial strategy employed by defense counsel to illustrate that defendant had been falsely accused of arson in the past, most notably by Fisher, and that there was an "arson ring" in the area.

Unsuccessful trial tactics do not amount to ineffective assistance of counsel in every case (People v De Mauro, 48 NY2d 892; People v Aiken, 45 NY2d 394, 399-400; People v Jackson, 74 AD2d 585, 586-587). Nor is the right to counsel "intended to afford a defendant, aided by the wisdom of hindsight, [an opportunity] to second guess matters of trial strategy employed by counsel" (People v Aiken, supra, p 399). The pivotal issue is always whether counsel, appointed or retained, failed to provide effective representation so as to deprive the defendant of a fair trial (see People v Pritchett, 48 NY2d 933; People v Aiken, supra, p 401). For example, where defense counsel elicits incriminating evi-

dence against his own client, which is not part of any discernible or reasonably plausible trial strategy, courts have not been hesitant to reverse convictions (see *People v Pritchett, supra; People v Jones*, 25 NY2d 637; *People v Baldi*, 76 AD2d 259).

The record establishes that defense counsel's cross-examination of prosecution witnesses implicated defendant in three specific uncharged arsons set· at his insistence and request according to Fisher, elicited hearsay testimony that the defendant was responsible for "a dozen other fires" in the 56th Street area, and established that numerous arsons occurred in the 56th Street area. Defense counsel's development of these criminal accusations and crimes outside of the scope of the indictment are "so prejudicial to the defendant as to deprive him of his right to a fair trial in conformance with constitutional standards" *(People v Jones*, 30 AD2d 1038, 1039, affd 25 NY2d 637, *supra)*, unless counsel's conduct is justified by a "reasonably plausible strategy decision" *(People v Pritchett*, 48 NY2d 933, 935, *supra)*.

The mere fact, however, that counsel's conduct, in eliciting what on the surface appears to be incriminating testimony, may be characterized as a trial tactic does not immunize such conduct from scrutiny. The quality of counsel's representation is measured by a "flexible framework" *(People v Aiken*, 45 NY2d 394, 398, *supra)* not confined by the "mockery of justice test" *(People v Tomaselli*, 7 NY2d 350) nor limited to the "reasonable competence criteria" *(People v Droz*, 39 NY2d 457, 462; see, also, *People v Wise*, 64 AD2d 272; *People v Smith*, 61 AD2d 91). Accordingly, we must examine the record to discern the existence of any consistent and plausible strategy employed by defense counsel, i.e., any explanation for the challenged aspect of representation, and whether the explanation demonstrates that counsel was a reasonably competent, conscientious and diligent advocate. Given Fisher's testimony which was amply corroborated by other witnesses, the issue of guilt was not a close one and the likelihood of a favorable jury verdict was remote. Under these circumstances defense counsel was certainly justified in developing a trial strategy which, if believed, provided some possibility of an acquittal.

In his opening remarks defense counsel told the jury that he could not tell them what took place (at the fires) and that the defendant had "no side" (to the prosecution theory of the case) because he was not involved in the arsons although he would take the stand. Counsel also pointed out that the prosecution's opening statement failed to explain the circumstances surrounding Fisher's acts. "They wanted to talk about some big ring in this area, they wanted to include Mr. Dietz, who for years has been trying to better the area". Counsel stated that the defense would find out "today what was in the mind of Fisher [at the time the arsons occurred]" and in the minds of the police officers when they questioned Fisher and Charles Wilson, another prosecution witness who corroborated Fisher's testimony regarding the 144 56th Street fire and connected defendant with the commission of that crime. On summation counsel reminded the jury that the defendant, who testified and was subjected to extensive cross-examination, did not "burn these buildings" and that now it (prosecution theory of the case) was no longer "one-sided".

The testimony that defense counsel elicited to show that many fires had occurred in the area of the charged arsons also indicated that defendant's father was often a victim of these fires and that defendant himself was a victim of arson rather than one of its perpetrators. Further, the testimony implicating defendant in the specific uncharged arsons attacked and tended to destroy the credibility of Fisher, who was the confessed perpetrator of these arsons, by showing that Fisher had always falsely accused defendant of the arsons in the past and that his current accusations were merely an extension of that pattern. On summation counsel bolstered this image and characterized Fisher as the People's "star witness, arsonist" and further described him as "a firebug who is burning nine places down". Also consistent with this strategy, during the trial defense counsel developed that certain of the main witnesses for the People were "firebugs", arsonists or related to arsonists. Counsel's apparent reliance on the proposition that defendant's chances for an acquittal would be enhanced by showing that he had been repeatedly blamed for the many fires admittedly set by the People's main witness is not unreasonable nor diffi-

cult to accept as a trial strategy (cf. *People v Baldi*, 76 AD2d 259, *supra; People v Jackson*, 74 AD2d 585, *supra*).

The record as a whole reflects that defense counsel provided reasonably competent assistance and that he was diligent and conscientious. True, there is a manifestation of ineptness, confusion, and failure on occasion on defense counsel's part to object to hearsay testimony. The case, however, was not hastily prepared and the defense was reasonably developed. Counsel did not fail to call proper witnesses or omit any essential defense that was available. Although his summation was no "model of clarity" and was incomprehensible at times, it focused directly and inflexibly on defendant's innocence and denial of involvement in any arson. There is no requirement that counsel be free from any errors in the conduct of the trial *(People v Pries*, 58 AD2d 713) and his conduct must be considered in its entirety *(People v Sellars*, 74 AD2d 551; *People v Williams*, 34 AD2d 695). Defense counsel developed testimony attacking the racial motives ascribed to the defendant, and the timing of the acts which were elicited by the prosecution to show a personal animosity. In addition, counsel presented an alibi defense to the Boesken fire and character witnesses. He adequately cross-examined the prosecutor's witnesses in an attempt to impeach their credibility by discrediting them and developing inconsistencies in their testimony. He met the theory of the prosecution that Fisher acted on instructions from defendant who was motivated by racial or personal animosity and he developed that arsonists were at work in the area, that the prosecutor's witnesses were arsonists who blamed defendant for the arsons in which they were involved, and that their credibility was suspect. Notably defense counsel's conduct is essentially challenged in only the one regard and the defendant, who had retained him prior to his arraignment seven months earlier, did not object to his counsel's course of conduct in any way.

We cannot say that the record demonstrates that the judgment of defense counsel was so manifestly unreasonable as to be unprotected by the label of "trial strategy". "In our view, then, the record in this case viewed as a whole demonstrates reasonably plausible strategy decisions and trial tactics not amounting to ineffective assistance. We are

not persuaded that trial counsel's performance here should undo a jury verdict which was amply supported by the evidence" *(People v Jackson,* 74 AD2d 585, 587, *supra).*

We have examined the other contentions raised by the defendant and find them to be without merit.

The judgments of conviction are therefore affirmed.

HANCOCK, JR., J. P., DOERR and DENMAN, JJ., concur; CALLAHAN, J., not participating.

Judgments affirmed.