■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID SANIN, Appellant. — Judgment unanimously reversed, on the law and facts, and a new trial granted. Memorandum: After a jury trial defendant was convicted of criminal possession of a controlled substance in the second degree (Penal Law, § 220.18, subd 1) and criminal possession of a weapon in the third degree (Penal Law, § 265.02, subd [4]). He was sentenced to three years to life on the first count and two to four years on the second, the sentences to be served concurrently. Prior to the date of sentencing, defendant discharged his trial counsel and retained his present counsel who moved to set aside the verdict and to be granted a new trial pursuant to CPL 330.30, 330.40 and 330.50 on the ground that defendant was denied a fair trial and effective assistance of counsel as guaranteed by the Fifth and Sixth Amendments. The motion was denied and judgment was entered. Defendant challenges his convictions on the ground that he was denied the effective assistance of counsel. Although such claims are frequently made by convicted defendants, they are rarely supported by the record. The record before us, however, reveals that defendant's claim is meritorious. Two detectives from the narcotics squad of the Buffalo Police Department, Di Pirro and Sperazz, obtained a warrant to search premises at 82 Flower Street lower, Buffalo, New York, and "the person of Foxy white male early 30's light colored hair, long and any other person found inside said 82 Flower St. lower, when search made thereof hereunder." Armed with the warrant, they arrived at 82 Flower Street at 1:05 A.M. on October 19, 1978. The officers observed defendant, David Sanin, whom they knew to be the "Foxy" described in the warrant, pulling into the driveway. The officers pulled in behind him, identified themselves, told him they had a search warrant for his house, searched him and found a vial containing white powder which proved to be cocaine. Defendant was placed under arrest and when Di Pirro started informing him of his *Miranda* rights, defendant stopped him and told him he understood his rights as he had been through it before. Di Pirro and Sperazz, joined by other police officers, then took defendant into the apartment which defendant opened with a key. Inside they found various drug paraphernalia,

some of which contained cocaine residue, and, in a vacuum cleaner, two containers with more than one and one-half ounces of cocaine. When confronted with the containers, defendant said something to the effect that "it's just coke, there's no heroin" and also that there was about "one-eighth of an ounce" in the small vial found on his person. In addition to the cocaine and drug paraphernalia, a loaded gun was found under the bed in the rear bedroom from which defendant took some belongings when he was taken to police headquarters. Defendant was indicted in March, 1979 and retained counsel, a respected lawyer with many years' experience in the practice of criminal law. In April, 1979 defense counsel suffered a cerebral hemorrhage which incapacitated him for many months, causing trial on the indictment to be delayed until April, 1980. Defense counsel made no pretrial motions to attempt to limit the scope of the search warrant and to suppress the statements made and contraband seized in the driveway of defendant's home. Language very similar to that in the warrant before us was found by the Court of Appeals to preclude search of a person away from the premises named in the warrant and to require the suppression of the contraband seized from his person *(People v Green,* 33 NY2d 496). Although we do not pass on the question of whether such motion would have been successful, the critical nature of that seizure and the evidence which flowed therefrom clearly required that it be challenged. Similarly, the statements made by the defendant at that juncture, revealing as they did defendant's familiarity with arrest procedures and his knowing possession of a controlled substance should have been the subject of a motion to suppress, if for no other reason than to test the atmosphere in which the statements were made and whether defendant had been adequately apprised of his rights so that counsel could acquire this information outside the presence of the jury. As it was, he engaged in such inquiry during his cross-examination of the arresting officers, and thereby introduced evidence which was highly prejudicial. "[W]here defense counsel elicits incriminating evidence against his own client, which is not part of any discernible or reasonably plausible trial strategy, courts have not been hesitant to reverse convictions (see *People v Pritchett, supra; People v Jones,* 25 NY2d 637; *People v Baldi,* 76 AD2d 259)" *(People v Dietz,* 79 AD2d 476, 477-478). On cross-examination, defense counsel, in purporting to paraphrase information relayed by an informant to the police, characterized defendant's activities as drug dealing whereas he was charged only with possession. Additionally, he suggested that defendant had engaged in other illegal activities both prior to and subsequent to his arrest on these charges. To compound the prejudice, during his summation he referred to defendant as "snorting cocaine" although there was nothing in the testimony to suggest that. Among other omissions in the defense were the waiver of an opening statement, the failure to fashion any reasonably plausible theory as a defense, focusing rather on the absence of fingerprint evidence and the fact that the expert and custodial witnesses did not personally know the defendant. The summation was rambling and incoherent and failed even to mention the weapon charge. There was no attempt to show that defendant had nonexclusive possession of the premises nor was there any request to so charge. Indeed, counsel made no requests to charge and, upon the court's urging, stated that he had not thought about whether there were any lesser included offenses so as to request a charge down. The court was forced to ask whether he wanted a charge that defendant's failure to take the stand could not be considered as proof of guilt. It is urged that the evidence of defendant's guilt was so overwhelming that the most skillfully fashioned defense would have been unavailing. The standard by which these cases are to be measured is not whether a more effective attorney would have obtained an acquittal (see *People v Brown,* 45 NY2d 852) but whether the representation of defendant

was so ineffective as to deprive him of a fair trial. "We have often noted that it is impossible to precisely define 'inadequate' or 'ineffective' legal representation or 'to formulate standards which will apply to all cases' *(People v Bennett,* 29 NY2d 462, 466). However, it is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense *(People v Bennett, supra)* and who is familiar with, and able to employ at trial basic principles of criminal law and procedure *(People v LaBree,* 34 NY2d 257; cf. *People v Jones,* 25 NY2d 637). Whether counsel has adequately performed these functions is necessarily a question of degree, in which cumulative errors particularly on basic points essential to the defense, are often found to be determinative (see, e.g., *People v Bennett, supra; People v LaBree, supra)." (People v Droz,* 39 NY2d 457, 462.) Whether measured by the more stringent standard of "reasonable competence" *(People v Aiken,* 45 NY2d 394, 398, and cases cited therein) or that of the conventional "mockery of justice" standard *(People v Brown,* 7 NY2d 359, 361), it is evident from the record that the representation afforded defendant was woefully inadequate. The damaging evidence elicited by defense counsel was clearly not part of any "reasonably plausible trial strategy" (cf. *People v Dietz,* 79 AD2d 476, *supra)* but can be attributed only to the fact that counsel's abilities had been impaired by the stroke which he suffered. The totality of omissions and commissions is such that the conclusion is inescapable that defendant was deprived of the effective assistance of counsel and thereby of a fair trial, a right to which he is constitutionally entitled. (Appeal from judgment of Erie Supreme Court, Armer, J. — criminal possession of a controlled substance, second degree, criminal possession of a weapon, second degree.) Present — Simons, J.P., Hancock, Jr., Doerr, Denman and Moule, JJ.