■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARCHIE SHANNON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Westchester County (McNab, J.), rendered September 4, 1980, convicting him of sodomy in the first degree (two counts), burglary in the first degree and assault in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. On the evening of August 25, 1979, the complainant, a 67-year-old widow who lived alone in a senior citizens' housing project, stepped out of her apartment and into the hallway to deposit garbage in the incinerator. She heard footsteps and was then suddenly seized from behind and forced

back into her apartment. She was thrown against a table and fell to the floor, fracturing several ribs. She looked up and, in the well-lit apartment, saw two men standing over her. She would later identify one of the intruders as defendant Archie Shannon. According to the complainant's trial testimony, her injuries made her unable to rise from the floor. At first, the two assailants yelled profanities at her. Then the defendant's companion approached her and, encouraged by the urgings of the defendant, ripped her nightgown and sat on her chest. He then forced her mouth open and sodomized her. The complainant continually looked up at the defendant with the hope that he would stop his friend. The defendant, however, continued to offer encouragement to his companion who, after some seven minutes, ejaculated into the complainant's mouth. He then stood up, laughed and addressing the defendant, said, "Come on Shannon, it's your turn". The defendant then followed the example of his companion. He sat on the complainant, sodomized her and, after some five minutes, ejaculated into her mouth. Both men laughed and taunted the complainant, and then left. According to the complainant, the entire incident took approximately 15 minutes. At trial, the defense offered an alibi supported by defendant's own testimony and that of his common-law wife and her sister. No challenge is raised to the competency of the manner in which the alibi evidence was prepared or presented. The defendant contends, however, that he was denied effective assistance of counsel because his retained attorney, *inter alia,* failed to move for a *Wade* hearing or to object to the introduction of evidence of a pretrial photographic identification, and failed to request a *Sandoval* hearing to preclude the prosecutor from confronting the defendant with his prior convictions. The defendant argues further that the introduction of evidence of the prior photographic identification in the People's direct case independently requires reversal. Under the unusual circumstances at bar, we find the defendant's contentions to be without merit. In *People v Jackson* (74 AD2d 585, affd 52 NY2d 1027), the defendant was charged with robbery. His attorney competently presented a four-witness alibi defense. Nevertheless, aware that the alibi witnesses were vulnerable to impeachment either because of a close family relationship to the defendant or because of an unsavory personal background, counsel attempted to undermine the People's identification testimony by exploring the photographic identification made by the prosecution's witnesses. Counsel's apparent purpose was to persuade the jury that the identification testimony was not the product of the witnesses' independent recollection but of subtle police suggestion furthered by the photographic identification. On appeal, in rejecting the defendant's claim of ineffective assistance of counsel, we wrote (74 AD2d 585, 586-587, *supra*): "As executed at trial, counsel's strategy was somewhat unorthodox and apparently unsuccessful. Nevertheless, it is not the law that, with the benefit of hindsight, an attorney will be judged incompetent whenever he unsuccessfully employs an unusual or innovative approach at trial. As long as counsel demonstrates reasonable competence, there can be no claim of ineffective assistance. * * * In our view * * * the record in this case viewed as a whole demonstrates reasonably plausible strategy decisions and trial tactics not amounting to ineffective assistance. We are not persuaded that trial counsel's performance here should undo a jury verdict which was amply supported by the evidence." The Court of Appeals affirmed for the reasons stated in our memorandum, noting that "counsel's decision to risk use of the photo array evidence was at most a mistaken judgment as to trial strategy and cannot be characterized as ineffective assistance of counsel" (52 NY2d 1027, 1029, *supra*). In our view, the circumstances at bar are similar and demonstrate calculated trial strategy rather than ineffective assistance of counsel. Trial counsel here competently

prepared and presented a three-witness alibi defense. His witnesses, however, were hardly disinterested since one was the defendant himself, one was the defendant's wife, and one was his sister-in-law. Counsel's decision not to rely solely on the alibi was dictated not only by the vulnerability of his own witnesses, but by the overwhelming strength of the People's proof. Immediately after the crime, the complainant described one of her attackers as a light-skinned black man, approximately 6 feet tall and 18 years of age, with red hair. The defendant closely fit this description, and when his photograph was included in the array shown to the complainant, she unhesitatingly identified him. Moreover, not only was the defendant of a rather distinctive appearance but the complainant actually heard the accomplice call him by name — "Shannon" — during the incident. Thus, the prosecution had available and was able to present overwhelming proof of guilt consisting of the testimony of a woman who had observed the defendant at close range in a well-lit apartment for a period of some 15 minutes and who had correctly described his distinctive appearance and had actually heard his name. Faced with this evidence, and with the relative weakness of the alibi defense, counsel opted to pursue two additional theories. First, he attempted to persuade the jury that the complainant's identification was suspect essentially because she would have identified any redheaded black man as the perpetrator, and identified the defendant solely because his photograph was the only one in the array portraying a person of that description. To this end, and in preparation of the argument he made in summation, counsel revealed in his opening statement that the complainant had identified the defendant's photograph, and he later pointedly questioned the investigating detective regarding the method of selection of photographs for the array and the appearance of those depicted. As a second theory, counsel attempted to demonstrate that the crime charged was entirely out of character for the defendant, since none of the crimes he had previously committed involved any sort of sexual attack. Thus, counsel did not seek to preclude inquiry into the defendant's prior record, but rather made affirmative use of that record as part of his defense. In assessing this tactic, it might well be noted that, in view of the recent vintage and larcenous nature of the defendant's prior crimes, a *Sandoval* motion to preclude inquiry into them would almost certainly have met with only limited success at best. A failure to request pretrial hearings does not in itself establish ineffective assistance of counsel (see, e.g., *People v De Mauro,* 48 NY2d 892). Where, as here, such failure is consistent with a reasonably plausible over-all trial strategy, there is no basis to conclude that the defendant was deprived of meaningful representation (see *People v Baldi,* 54 NY2d 137; *People v Jackson,* 74 AD2d 585, affd 52 NY2d 1027, *supra*). The defendant's remaining challenges to counsel's conduct are inconsequential, since by reason of prompt court intervention, it caused no prejudice. Finally, under the circumstances at bar, we find no merit in the defendant's contention that introduction in the People's direct case of evidence of a prior photographic identification requires reversal. As noted, it was defense counsel, as part of his trial strategy, who in his opening statement first revealed the photographic identification. Moreover, the primary reason for excluding evidence of photographic identifications is that it is likely to reveal to the jury that the defendant had previously been in trouble with the law (see, e.g., *People v Caserta,* 19 NY2d 18, 21). Here, however, the defendant's prior record and, indeed, the very fact that he was identified by means of a photographic array, were integral components of his trial strategy in a case difficult to defend. Accordingly, no reversible error was committed. For all of the foregoing reasons, the judgment is affirmed. Mollen, P. J., Damiani, Lazer and Mangano, JJ., concur.