■ The People of the State of New York, Respondent, v Vernon Morris, Appellant. — Appeal by defendant from two judgments of the Supreme Court, Queens County (Giaccio, J.), both rendered October 5, 1981, convicting him of sodomy in the first degree, robbery in the third degree (three counts), unlawful imprisonment in the first degree (three counts), and criminal possession of stolen property, upon jury verdicts, and imposing sentences. ¶ Judgments affirmed. ¶ Defendant's convictions arise out of the robbery of three women on January 26, 1981, during the course of which one woman was sodomized and their automobile stolen. Two days later, he was apprehended, seated in the stolen automobile with the keys in his possession and the pocketbook of one of the victims lying nearby. Two of the victims thereafter identified defendant in a photo spread and in a physical lineup at which defendant's attorney was present. ¶ On this appeal, defendant contends that he was deprived of the effective assistance of counsel due to his counsel's failure, *inter alia,* to request a *Wade* identification hearing. We disagree. ¶ Perhaps counsel should have requested a hearing, but that fact alone does not constitute a basis for finding ineffectiveness (*People v Eddy,* 95 AD2d 956, 957; *People v Williams,* 87 AD2d 876, 877; cf. *People v Lane,* 60 NY2d 748; *People v Baldi,* 54 NY2d 137). *People v Figueroa* (83 AD2d 564, 565), and the authorities cited in the dissent herein (*People v Vezza,* 89 AD2d 882; *People v Barnes,* 70 AD2d 882) are not to the contrary. In each, there was an "extensive * * * list of the trial defense attorney's blunders [which] demonstrate[d] unequivocally that defendant did not receive a fair trial" (*People v Figueroa, supra,* p 565), which we do not find to be the case here. Moreover, we have recognized that it is acceptable trial

strategy to waive a *Wade* hearing and explore at trial the photographic identification procedure in order to establish that the "identification testimony was not the product of the witnesses' independent recollection but of subtle police suggestion furthered by the photographic identification" (*People v Shannon,* 92 AD2d 554, 555). ¶ Indeed, even if a *Wade* hearing had been improperly denied by the trial court, reversal would still not be required since the testimony clearly established an ample source independent of any pretrial identification procedure (*People v Tillman,* 74 AD2d 911). All three complainants were able to get a good look at defendant during the commission of the crimes. In addition, one of the victims would not have been a witness at the hearing since she did not participate in any out-of-court identification. ¶ In all other respects the legal assistance that defendant received amply met the standard of reasonable competence (*People v Baldi, supra; People v Jackson,* 52 NY2d 1027, affg 74 AD2d 585; *People v Williams, supra*). Defense counsel made timely pretrial motions, resulting in the disclosure of impeachment material, demanded proper trial attire for his client, attacked the prosecutor's peremptory challenges as racially motivated, subjected each of the People's witnesses to a thorough cross-examination, presented a defense in which he conducted a complete examination of the defendant and called witnesses on his behalf. In summation, he vigorously attacked the People's case and advanced the defendant's contentions fully (see *People v Haire,* 96 AD2d 1110, 1111; *People v Millson,* 93 AD2d 899). ¶ Defense counsel's concession of his client's guilt of the crime of criminal possession of stolen property was based upon defendant's own testimony that he knew that the car was stolen. Clearly, it was counsel's hope that by admitting guilt on that charge, the jury would be more apt to view him as being candid, credit his testimony, and thereby obtain an acquittal on the more serious charges. It has consistently been held that the courts should not second guess trial tactics employed by defense attorneys (*People v Lane,* 60 NY2d 748, *supra; People v Baldi, supra; People v Jackson, supra*). ¶ Nor can the failure to object to certain of the prosecutor's comments in summation be deemed an indication of incompetence (*People v Fuschino,* 87 AD2d 716, 717, affd 59 NY2d 91). In fact, any objection would probably have been futile as the comments were fair responses to the use of similar phrases by defense counsel (*People v Arce,* 42 NY2d 179, 189-190; *People v Marks,* 6 NY2d 67, 77; cf. *People v Schaaff,* 71 AD2d 630). ¶ True, at one point, defense counsel did contradict the defendant's testimony by stating that the lineup was fair. But this was of relatively little consequence in the over-all representation and at worst "amounted to [a] lapse of judgment and does not rise to the level of ineffective assistance of counsel" (*People v Lane,* 93 AD2d 92, 98; cf. *People v De Mauro,* 48 NY2d 892; *People v Aiken,* 45 NY2d 394, 399). ¶ It is also significant that defendant never suggested that he was dissatisfied with the quality of the representation he was receiving. He was not bashful on that score, having expressed dissatisfaction with his first attorney and having obtained a substitution. ¶ In sum, while defense counsel's performance may not have been errorless, the Constitution does not require perfection. Even under the most liberal standard for gauging whether effective assistance has been rendered, a defendant must demonstrate that his attorney's actions blotted out a substantial defense which "resulted in actual and substantial disadvantage to the course of his defense" (*Washington v Strickland,* 693 F2d 1243, 1262, cert granted __ US __, 103 S Ct 2451; see Conflitti, New Focus on Prejudice in Ineffective Assistance of Counsel Cases: The Assertion of Rights Standard, 21 Amer Crim L Rev 29; Harper, Effective Assistance of Counsel — Evolution of the Standard, 58 Fla BJ 58; cf. *Knight v State,* 394 So 2d 997 [Fla] [defendant has burden of showing that specific deficiency was so prejudicial that the outcome of the proceedings was affected]). ¶ Defendant has not met his burden

(see *People v Abdullah,* 100 AD2d 550). He received a fair trial and constitutionally effective representation (cf. *People v Sanin,* 84 AD2d 681, 682-683). We perceive no basis to overturn the conviction and subject the victims to another trial (*Morris v Slappy,* 461 US __, __, 103 S Ct 1610, 1617-1618). Mollen, P. J., Titone and Niehoff, JJ., concur.

O'Connor, J., dissents and votes to reverse the judgments of conviction and orders a new trial, with the following memorandum: In my opinion, defense counsel's performance was so grossly inadequate as to deprive defendant of the "meaningful representation" to which he was constitutionally entitled (*People v Baldi,* 54 NY2d 137, 147; see, also, *People v Droz,* 39 NY2d 457). ¶ Defendant's conviction on charges of sodomy, robbery and unlawful imprisonment rested solely on his identification as the perpetrator by the three victims. Despite the fact that the description of the perpetrator given by the victims to the police differed somewhat from the actual physical dimensions of defendant, that two of the three victims identified defendant after a pretrial photo array and lineup and that the prosecutor himself conceded that "the only issue * * * [was] one of identification", trial counsel never requested a *Wade* hearing. Yet such a hearing where identification is the primary issue is mandated by any coherent standard of practice, and it can scarcely be believed, as the People argue on appeal, that a *Wade* hearing was consciously omitted as part of a trial strategy to "permit the evidence concerning the out-of-court identification to go before the jury and then highlight the unfairness of these procedures". The fact is that a *Wade* hearing would never have precluded defendant, as the People incorrectly imply, from subsequently presenting any information concerning the pretrial procedure to the jury for its consideration (see *People v Foti,* 83 AD2d 641). Furthermore, even if a *Wade* hearing would in all likelihood have failed to achieve suppression of the identifications, the identifications "should have been the subject of a motion to suppress, if for no other reason than to test the atmosphere in which [they] were made * * * so that counsel could acquire this information outside the presence of the jury" (*People v Sanin,* 84 AD2d 681, 682). Unlike the situation in *People v Baldi (supra),* no perceptible trial strategy here can justify this oversight. ¶ Trial counsel compounded the error, *inter alia,* by repeatedly eliciting incriminating evidence against his client. In the absence of a reasonably plausible strategy — not evident to me here — such trial conduct has been held reversible (see *People v Pritchett,* 48 NY2d 933, 934-935; *People v Jones,* 25 NY2d 637). Furthermore, defense counsel stated on summation that the physical lineup was fair, even though on cross-examination defendant had twice stated it was not fair. Contradicting defendant in this manner was hardly of "little consequence" and indubitably served to undercut his credibility before the jury. Counsel's statement on summation that he would be "disappointed" if the jury did not convict defendant of the charge of possession of a stolen car could only have further alienated the jury from defendant. Nor did counsel object when the prosecutor stated on summation that if the jury believed defendant's witnesses they would be calling the police officers liars. This tactic has been widely condemned (see *People v Schaaff,* 71 AD2d 630), and counsel's failure to object to it is but one additional indicium of his inadequate representation. Finally, there is nothing in the record to indicate that counsel obtained and reviewed prior statements of the People's witnesses, and his tepid cross-examination of witnesses, even failing to ask about the perpetrator's characteristics, bears out this omission. ¶ As a result of counsel's failure to seek a *Wade* hearing where identification was the sole issue, coupled with the extensive, but by no means exhaustive, list of other trial errors, defendant was deprived of the effective representation and a fair trial to which he was

entitled, thus, warranting reversal (see *People v Vezza,* 89 AD2d 882; *People v Figueroa,* 83 AD2d 564; *People v Barnes,* 70 AD2d 882). This is no less true even where evidence of defendant's guilt may be strong (see *People v Brown,* 45 NY2d 852; *People v Bennett,* 29 NY2d 462). ¶ Accordingly, I respectfully dissent and vote to reverse the judgments of conviction and order a new trial.