People v St. John (2004 NY Slip Op 50792(U))

[*1]

People v St. John

2004 NY Slip Op 50792(U)

Decided on July 21, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 21, 2004

Supreme Court, Kings County
PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
against
ELVIS ST. JOHN, Defendant.
2861-2002

Attorney for the People:
Charles J. Hynes
District Attorney, Kings County
350 Jay Street
Brooklyn, NY 11201
by ADA Russell Newbold Araya
Attorney for the defendant: Douglas G Rankin, Esq.
Law Offices of Douglas G Rankin & Assoc., PC
50 Court Street, Suite 600
Brooklyn, New York 11201

Robert J. Collini, J.
On October 11, 2002, a Kings County jury found the defendant guilty of three separate counts of criminal sale of a controlled substance in the third degree (PL 220.39). Each count related to a separate criminal transaction.[FN1] On October 29, 2002, the defendant was sentenced, as a predicate felony offender (PL 70.06)[FN2], to an aggregate indeterminate term of ten to twenty-one years imprisonment.[FN3]
On August 17, 2001, the defendant sold crack cocaine to an undercover police officer. The defendant was arrested within five minutes of the sale, but was released on bail. He was indicted by the King's County Grand Jury on September 13, 2001. On April 9, 2002, and on April 25, 2002, while his initial criminal case was pending, the defendant sold crack cocaine to the same undercover officer. He was not arrested at the time of these transactions. The defendant was ultimately arrested on April 29, 2002, while appearing in court with respect to his August 17, 2001 arrest.
A few hours after his April 29, 2002 arrest, the defendant was brought to the 67th precinct, where an undercover officer identified the defendant as the man who had sold him drugs on April 9, 2002, and on April 25, 2002.
[*2]
The three transactions were consolidated for trial before a court of concurrent jurisdiction. The case was then sent to this court for trial. During the trial, the undercover officer testified about three separate sales, about his station-house identification of the defendant and positively identified the defendant in court. A King's County jury convicted the defendant of all three transactions.
The defendant now moves to vacate his judgment of conviction, pursuant to CPL 440.10. He contends that trial counsel was ineffective due to the failure to move for a pre-trial Wade hearing [FN4]. The People have filed an answer in opposition.
The right to effective assistance of counsel is guaranteed by the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 6; People v McDonald, 1 NY3d 109, 113).
In Strickland v Washington (466 US 668), the United States Supreme Court established a two-part test for evaluating defendants' Sixth Amendment claims of ineffective assistance of trial counsel. To prevail, a "defendant must show that counsel's performance was deficient," and "that the deficient performance prejudiced the defense" (Strickland, 466 US, at 687; People v Mc Donald, 1 NY3d 109, 113). "The first prong of the Strickland test is essentially a restatement of attorney competence, which requires a showing that counsel's representation fell below an objective standard of reasonableness" (People v Mc Donald, 1 NY3d, at 113; Hill v Lockhart, 474 US 52, 58). The second prong, the requirement of prejudice, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the trial (People v Stultz, 2 NY3d 277, 283-284).
New York has long recognized the importance of adequate counsel in criminal cases (People v Stultz, ibid.; People v Silverman, 3 NY2d 200; People v McLaughlin, 291 NY 480). In People v Baldi (54 NY2d 137, 147), the New York Court of Appeals set the standard for claims of ineffective assistance of counsel in this State, holding that the constitutional requirements are met when the defense attorney provides "meaningful representation." 
The absence of Strickland's prejudice requirement is the distinguishing characteristic of Baldi (People v Stultz, 2 NY3d, at 283). As recently stated by our Court of Appeals:

 Under our Baldi standard, we are not indifferent to whether the defendant was or was not prejudiced by trial counsel's ineffectiveness. We would, indeed, be skeptical of an ineffective assistance of counsel claim absent any showing of prejudice. But under our Baldi jurisprudence, a defendant need not fully satisfy the prejudice test of Strickland. We continue to regard defendant's showing of prejudice as a significant, but not dispositive, element in assessing meaningful representation. Our focus is on the fairness of the proceedings as a whole.
(People v Stultz, 2 NY3d, at 283-284).
"While the inquiry focuses on the quality of the representation provided to the accused, the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (People v Benevento, 91 NY2d 708, 714). "Whether defendant would have been acquitted of the charges but for counsel's errors is [*3]relevant, but not dispositive under the State constitutional guarantee of effective assistance of counsel," because "our legal system is concerned as much with the integrity of the judicial process as with the issue of guilt or innocence" (People v Benevento, 91 NY2d, at 714, quoting People v Donovan, 13 NY2d 148, 153-154).
"To prevail on a claim of ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for counsel's failure[s]" (People v Rivera, 71 NY2d 705, 709; see People v Taylor, 1 NY3d 174, 177; People v Benevento, 91 NY2d, at 712; People v Bussey, 6 AD3d 621, 622). "[T]rial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness. So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (People v Baldi, 54 NY2d, at 146-147; People v Bussey, 6 AD3d, at 622).
Although defendant's counsel failed to request a Wade hearing, the record shows that he delivered cogent and coherent opening and closing statements, raised proper and relevant objections and cross-examined the People's witnesses, all actions appellate courts have held to constitute "meaningful representation" (People v Hewlett, 71 NY2d 841, 842). 
"What constitutes effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation" (People v Baldi, 54 NY2d, at 146). Even the most skilled advocate cannot be expected to prevail when faced with compelling evidence of his or her client's guilt. Accordingly, "trial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness" (People v Rivera, 71 NY2d, at 708; People v Baldi, 54 NY2d, at 146-147). This court must "avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. It is always easy with the advantage of hindsight to point out where trial counsel went awry in strategy" (People v Baldi, 54 NY2d, at 146). Thus, "simple disagreements with strategies and tactics" will not suffice (People v Rivera, 71 NY2d, at 709). Trial counsel's subjective reasoning is not even determinative, so long as the record, viewed objectively, "reveal[s] the existence of a trial strategy that might well have been pursued by a reasonably competent attorney (People v Satterfield, 66 NY2d 796, 799). To be successful on a claim of ineffective assistance of counsel, a defendant must establish the "absence of strategic or other legitimate explanations" for counsel's conduct (People v Rivera, 71 NY2d, at 709) and overcome the legal presumption that counsel's performance falls within the wide range of reasonable professional competence (Strickland v Washington, 466 US, at 688-689). Without such a demonstration, "it will be presumed that counsel acted in a competent manner and exercised professional judgment" (People v Rivera, 71 NY2d, at 709).
Accordingly, the question to be resolved is not only whether the defendant demonstrated that his counsel failed to provide effective representation, under the broad standards detailed above, but also "whether the attorney's conduct constituted 'egregious and prejudicial' error such that defendant did not receive a 'fair trial'" (People v Benevento, 91 NY2d, at 713, quoting People v Flores, 84 NY2d 184, 188).
The failure of counsel "to make a particular pretrial motion generally does not, by itself, establish ineffective assistance of counsel" (People v Rivera, 71 NY2d, at 709 ). Specifically, the [*4]failure to request a Wade hearing, standing alone, is insufficient to render counsel's representation ineffective (People v Morris, 100 AD2d 630, aff'd 64 NY2d 803; see also People v White, 137 AD2d 859, lv denied 72 NY2d 868; People v Boero, 117 AD2d 814) and the failure to request such a hearing might constitute legitimate trial strategy (People v Morris, 100 AD2d, at 630-631). 
The petitioner has failed to establish that his attorney had no strategic reason for not requesting a Wade hearing. In the absence of such showing, this court must presume that "counsel acted in a competent manner and exercised professional judgment" (People v Rivera, 71 NY2d, at 709).
Accordingly, the failure of trial counsel to request a Wade hearing does not constitute ineffective assistance of counsel and defendant's motion to vacate judgment, based upon such failure, must be denied.
In addition, counsel's failure to request a Wade hearing did not prejudice the defendant since he was not entitled to a Wade hearing under the facts and circumstances of this case.
Unlike an encounter between a civilian victim of a crime and a perpetrator, an undercover's prior contacts with the subject of the identification are more than "fleeting or distant" (People v Collins, 60 NY2d 214, 219; People v Newball, 76 NY2d 587, 591). In addition, undercover police officers are unlike ordinary witnesses to a crime (People v Morales, 37 NY2d 262, 271). An undercover officer's participation in a crime is "deliberate and planned" and the officer is "trained and experienced" for his role, which allows him to make careful observations (People v Morales, 37 NY2d, at 271).
Ordinarily, a Wade hearing is not granted where a trained police officer makes a confirmatory identification of a defendant with whom he had several previous encounters (People v Wharton, 74 NY2d 921; People v Gonzalez, 174 AD2d 690, lv denied 78 NY2d 1011). A confirmatory viewing is one that is "conducted for the sole purpose of ascertaining that the right individual has been or will be arrested and can obviate the need for a CPL 710.30 notice or a Wade hearing" (People v Waring, 183 AD2d 271, 273).
Four days after the final transaction, an undercover officer, who had three face-to-face transactions with the defendant, confirmed that the right person had been arrested when the defendant was brought to the precinct.
A station-house viewing, used as part of standard police operational procedure, is not the kind of per se suggestive or improper bolstering that is present in show-up identifications by civilian witnesses that may result in a misidentification (People v Wharton, 74 NY2d, at 923). A Wade hearing should only be held to determine the suggestiveness of a station-house viewing "[w]here the nature and the circumstances of the encounter and identification may warrant" such a judicial determination (People v Wharton, 74 NY2d, at 923). The passage of time from an undercover officer's observation of the subject can cast doubt on the reliability of his subsequent identification (People v Newball, 76 NY2d, at 592) and the subsequent identification should occur "at a place and time sufficiently connected and contemporaneous to the arrest itself" (People v Wharton, 74 NY2d, at 922). A show-up identification which takes place several hours, or even a couple of days, after the undercover transaction does not require a Wade hearing (People v Wharton, 74 NY2d 921 [three hours after transaction]; People v Montgomery, 213 [*5]AD2d 563, aff'd 88 NY2d 926 [single photograph identification of defendant one hour after last sale]; People v Johnson, 173 AD2d 734, lv denied 78 NY2d 1012 [photographic array two days after last sale]; People v Thompson, 149 AD2d 634 [station-house identification one day after undercover buy]).
By way of contrast, an identification made well after the final undercover buy will necessitate a Wade hearing (People v Mato, 83 NY2d 406 [station-house identification twenty six days after the transaction, not suggestive, but requires a Wade hearing]; People v Newball, 76 NY2d 587 ["drive-by" identification twenty-eight days after transaction requires a Wade hearing]; People v Di Girolamo, 197 AD2d 531 [station-house identification fifteen days after final transaction not suggestive, but requires a Wade hearing]; but see People v Connor, 137 AD2d 701, lv denied 71 NY2d 967 [a station-house identification seven months after the crime merely confirms that the right man has been arrested]).
In the pending matter, the four day time span between the undercover officer's final observation of the defendant and his station-house identification must be viewed as markedly different from an identification made weeks after the transaction and is more readily compared to a confirmatory identification made merely a day or two later.
 While engaged in three face-to-face sales transactions, the undercover officer had the opportunity to carefully observe the defendant, so that by the time of the station-house viewing, the "identification was behind him" and was "consistent with good police work" (People v Morales, 37 NY2d, at 272, United States ex rel. Cummings v Zelker, 455 F2d 714, 716, cert denied 406 US 927). The undercover's identification of the defendant was confirmatory, as that term is defined in the caselaw, and was not unduly suggestive. Under the facts and circumstances of this case, even if trial counsel had requested a Wade hearing, that application would have been denied . Accordingly, for the reasons set forth herein, the defendant's motion to vacate his judgment of conviction is hereby denied.
This constitutes the decision, opinion and order of the court.
________________________
JSC
Dated: July 21, 2004
Brooklyn, New York
Footnotes

Footnote 1:Count one related to a sale on August 17, 2001. Count four related to a sale on April 9, 2002. Count five related to a sale on April 25, 2002.

Footnote 2:For count one, the defendant was not sentenced as a predicate felon because this crime was committed before the defendant was sentenced on his earlier indictment.

Footnote 3: For count one, the defendant was sentenced to an indeterminate sentence of one to three years. For counts four and five, the defendant was sentenced to two indeterminate terms of four-and-a-half to nine years. All three sentences were to run consecutive to each other.

Footnote 4: Defendant's prayer for relief is based solely upon trial counsel's failure to request a Wade hearing.