■ In the Matter of LEMUEL SMITH, Petitioner, v GLENN GOORD, as Commissioner of the Department of Correctional Services, Respondent. [673 NYS2d 233] —Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which ordered that petitioner be placed in administrative segregation.

In May 1981, while serving three consecutive prison terms of 25 years to life on two murder convictions and a kidnapping conviction (*see*, *People v Smith*, 59 NY2d 156), petitioner murdered Correction Officer Donna Payant. Defendant was convicted of murder in the first degree and sentenced to death; however, on appeal, the Court of Appeals declared the applicable death penalty law to be unconstitutional (*see*, *People v Smith*, 63 NY2d 41, *cert denied* 469 US 1227). Defendant was ultimately sentenced to life imprisonment. In addition, following a tier III disciplinary hearing, petitioner was found guilty of institutional rule violations in connection with the Payant murder and as a penalty received 15 years in the special housing unit. In September 1996, just prior to the completion of that penalty, petitioner was given notice of the recommendation that he be placed in administrative segregation pursuant to 7 NYCRR 301.4. Following a hearing conducted pursuant to 7 NYCRR 301.4 (a) and 7 NYCRR part 254, the recommendation was confirmed and administrative segregation was ordered. That determination was affirmed upon administrative review and is now challenged in this CPLR article 78 proceeding.

We reject petitioner's primary contention that there was not substantial evidence in the record adduced before the Hearing Officer to support the conclusion that his presence in general population would pose a threat to the safety and security of the facility (7 NYCRR 301.4 [b]; *see*, *Matter of O'Keefe v Coombe*, 233 AD2d 640). Notably, " 'a prison's internal security is peculiarly a matter normally left to the discretion of prison

administrators' " (*Hewitt v Helms*, 459 US 460, 474, quoting *Rhodes v Chapman*, 452 US 337, 349, n 14; *see, Sandin v Conner*, 515 US 472, 482-483). "In assessing the seriousness of a threat to institutional security [such as would justify a prisoner's confinement in administrative segregation], prison administrators necessarily draw on more than specific facts surrounding a particular incident * * * [and] [t]he judgment of prison officials in this context, like that of those making parole decisions, turns largely on 'purely subjective evaluations and on predictions of future behavior' " (*Hewitt v Helms, supra*, at 474, quoting *Connecticut Bd. of Pardons v Dumschat*, 452 US 458, 464).

Deferring to respondent's unique expertise in predicting inmates' future behavior on the basis of a subjective evaluation of their past conduct, we conclude that the considerable record evidence concerning petitioner's numerous heinous crimes, including his several murder convictions and other acts of brutality toward women, and particularly his murder of a prison employee while housed in a maximum security prison, adequately support the conclusion that petitioner is a sexual predator who cannot be released into the general prison population without posing a serious threat to the life and safety of female employees (*compare, People ex rel. Gilmore v New York State Parole Bd.*, 241 AD2d 793, 793-794; *People ex rel. Talley v Executive Dept., N. Y. State Div. of Parole*, 232 AD2d 798, 799). We concur in the Hearing Officer's further conclusion that the less restrictive alternative of involuntary protective custody posed too great a risk because it would have provided petitioner with the opportunity to be isolated with female staff.

In our view, the fact that petitioner's 15-year placement in special housing had the salutary effect of preventing him from assaulting, raping or murdering any women during that time period does not inure to his benefit. A denial of the opportunity to commit a crime cannot be equated with good conduct or taken as probative evidence of rehabilitation. We are similarly unimpressed by petitioner's assurance that, due to an undoubtedly enhanced security protocol as the result of his brutal sexual mutilation and murder of Payant, a similar occurrence "could not happen today in a maximum security prison".

Petitioner's remaining contentions do not warrant extended discussion. We first note that our review of the record discloses no evidence of bias affecting the outcome of the proceeding (*see, Matter of Williams v Coughlin*, 190 AD2d 883, 886, *lv denied* 82 NY2d 651). In addition, there was no dispute concerning the subject matter of the Hearing Officer's brief off-the-record

discussion concerning documents (*see, Matter of Berrios v Kuhlmann*, 143 AD2d 475, 477). Finally, based upon petitioner's history of criminal convictions, any error committed in denying him access to his presentence probation reports must be deemed harmless. Petitioner's remaining contentions are either unpreserved for our consideration or lacking in merit.

Mikoll, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.