■ In the Matter of JOVAN FLUDD, Petitioner, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Respondent. [879 NYS2d 606]—

Garry, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which directed that petitioner be placed into administrative segregation.

In January 2006, petitioner was convicted in New York County of seven counts of forgery based on false liens that he filed, while incarcerated, under UCC article 1 against prosecutors and others who had participated in his previous prosecution. His sentence, imposed in March 2006, included certain restrictions on his mailing privileges. In subsequent disciplinary proceedings, petitioner was found guilty of two incidents of "kiting," or circumventing mailing restrictions by using another inmate's identification. A subsequent search of his cell revealed completed UCC-1 financing statements targeting correctional facility staff who had participated in the disciplinary proceedings. Shortly thereafter, respondent issued an administrative segregation recommendation based on the kiting incidents. The recommendation did not mention the UCC-1 forms. In September 2006, the Hearing Officer denied the recommendation for administrative segregation, finding that the kiting incidents did not pose a threat to the safety and security of the facility and that, although the false UCC-1 financing statements "may be found to threaten the financial security of the staff member involved," they could not be considered because, as the Hearing Officer erroneously stated, they were not found until after the recommendation was made. Respondent promptly applied to the sentencing court for an order holding petitioner in restrictive confinement, representing that it could not otherwise prevent him from making future false filings. The sentencing court issued a supplemental order directing petitioner's placement in the special housing unit (hereinafter SHU).

Petitioner initiated a CPLR article 78 proceeding which, in March 2008, resulted in a decision of the Appellate Division,

First Department, overturning the supplemental order and directing petitioner's release from the SHU (*Matter of Fludd v Goldberg*, 51 AD3d 153 [2008], *appeal withdrawn* 10 NY3d 858 [2008]). Respondent did not release him, but instead immediately issued a new administrative segregation recommendation against petitioner based upon his possession of the UCC-1 forms found in his cell in September 2006, his prior convictions for false UCC-1 filings, and the kiting violations. The recommendation was affirmed upon administrative appeal. Petitioner now seeks to have the determination annulled and to be released from the SHU.

The determination placing petitioner in administrative segregation was not, as he contends, based solely on his 2006 possession of the false UCC-1 forms targeting correctional staff. The evidence adduced at the administrative hearing, which included petitioner's previous convictions for false UCC-1 filings, the prior kiting incidents and, in particular, an additional kiting incident which took place in 2007 during petitioner's confinement in the SHU, was sufficient to permit the rational inference that petitioner intended to file the false UCC-1 forms and to continue his efforts to circumvent correspondence restrictions. It therefore constituted the requisite substantial evidence that his "presence in [the] general population would pose a threat to the safety and security of the facility" (7 NYCRR 301.4 [b]; *see Matter of Dumpson v Fischer*, 51 AD3d 1161, 1162 [2008]; *Matter of Ryan v Selsky*, 49 AD3d 926, 926 [2008], *lv denied* 10 NY3d 716 [2008]). While petitioner did not attempt any false UCC-1 filings after he was confined in the SHU, the " 'denial of the opportunity to commit a crime cannot be . . . taken as probative evidence of rehabilitation' " (*Matter of Blake v Selsky*, 10 AD3d 774, 776 [2004], quoting *Matter of Smith v Goord*, 250 AD2d 946, 947 [1998], *lv denied* 92 NY2d 810 [1998]; *accord Matter of Dumpson v Fischer*, 51 AD3d at 1162).

The decision of the First Department does not, as petitioner contends, mandate his release from administrative segregation. The Court's decision was narrowly directed at the sentencing court's lack of authority to issue a postjudgment order controlling the conditions of petitioner's confinement. It did not address respondent's independent administrative authority to place petitioner in the SHU in order to protect the safety and security of the facility (*see Matter of Fludd v Goldberg*, 51 AD3d at 159; 7 NYCRR 301.4 [b]). Respondent's assessment of the likelihood that petitioner would engage in future misbehavior was necessary to the exercise of its administrative authority and was not, as he contends, an improper attempt to punish

him for future misdeeds. "[T]he judgment of prison officials in [the] context [of assessing a threat to institutional security], like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior" (*Matter of Smith v Goord*, 250 AD2d at 947 [internal quotation marks and citations omitted]).

Turning to petitioner's procedural claims, petitioner has not shown that any prejudice resulted from the 18-month delay between the discovery of the UCC-1 forms in his cell and the administrative segregation recommendation (*see Matter of Di Rose v New York State Dept. of Correctional Servs.*, 276 AD2d 842, 843 [2000], *lv dismissed* 96 NY2d 850 [2001]). The delay was not caused by any subterfuge or negligence on respondent's part, but occurred because no need existed to assess whether petitioner imposed a threat to the facility's security while he was still subject to the sentencing court's supplemental order. Although no misbehavior report was issued based on petitioner's possession of the UCC-1 forms, such a report is not a prerequisite to an administrative segregation recommendation because the proceedings are not disciplinary in nature (*see Matter of Blake v Coughlin*, 189 AD2d 1016, 1017 [1993]).

The administrative segregation recommendation itself was sufficiently detailed to satisfy due process standards by providing petitioner with notice of the reasons for the recommendation and an opportunity to prepare a defense (*see Matter of Burr v Goord*, 17 AD3d 751, 752 [2005]). Although the UCC-1 forms were not served on petitioner with the recommendation, the Hearing Officer permitted him to examine them during the hearing by placing them against the glass that separated him from petitioner and, upon petitioner's protests, determined that the glass was not too dirty to permit the inspection.

Petitioner contends that he did not receive adequate employee assistance in preparing for his hearing, in part because his assistant did not report to him before the hearing with the results of his efforts on petitioner's behalf (*see* 7 NYCRR 251-4.2). However, upon discovering this failure, the Hearing Officer adjourned the hearing to permit petitioner to examine the assistant's report, and petitioner confirmed that he was provided adequate time to do so. Any failure on the assistant's part to obtain documents that petitioner requested in order to establish a double jeopardy defense was cured by the Hearing Officer's inclusion in the record of the First Department's *Fludd* decision and other documents pertaining to the 2006 administrative segregation proceeding. Petitioner has shown no prejudice resulting from his assistant's alleged failures (*see Matter of Burgess v Selsky*, 50 AD3d 1347, 1348 [2008]).

Petitioner has not met his burden of establishing that he was denied a fair hearing (*see Matter of McCoy v Leonardo*, 175 AD2d 358, 359 [1991]). The Hearing Officer permitted petitioner to call two witnesses that he requested during the hearing, and the witness testimony he had previously requested through his assistant was properly denied as immaterial or redundant to the proceeding (*see* 7 NYCRR 254.5 [a]). The Hearing Officer's expressions of frustration with petitioner during the hearing do not establish that he did not receive a fair hearing or that the outcome flowed from bias or prejudgment (*see Matter of Miller v Goord*, 2 AD3d 928, 930 [2003]; *Matter of Joyce v Goord*, 246 AD2d 926, 927 [1998]).

Finally, this Court's determination that petitioner is not entitled to an order annulling respondent's April 1, 2008 determination does not foreclose petitioner from any remedy, as his continued confinement in the SHU is subject to a mandated review and redetermination every 60 days (*see* 7 NYCRR 301.4 [d]).

Peters, J.P., Rose, Lahtinen and Malone Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.